JOLLEY URGA WOODBURY & LITTLE
WILLIAM R. URGA, ESQ. # 1195
Email: FedCt@juww.com
        wru@juww.com
3800 Howard Hughes Parkway, 16th Floor
Las Vegas, NV 89169
Telephone:     702.699.7500
Facsimile:     702.699.7555

ARNOLD & PORTER LLP
MICHAEL A. BERTA, ESQ.**
Email: michael.berta@aporter.com
SEAN M. CALLAGY, ESQ.**
Email: sean.callagy@aporter.com
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone:     415.471.3100
Facsimile:     415.471.3400

ARNOLD & PORTER LLP
LAUREN S. MIYAMOTO, ESQ.**
Email: lauren.miyamoto@aporter.com
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Telephone:     213.243.4000
Facsimile:     213.243.4199
**Pro Hac Vice Forthcoming
Attorneys for Defendant
CROCS, INC. a Delaware corporation

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| U.S.A. DAWGS, INC., a Nevada corporation,<br><br>Plaintiff,<br><br>v.<br><br>CROCS, INC., a Delaware corporation; and DOES 1-10,<br><br>Defendants. | Case No.: 2:14-cv-1461-RFB-PAL<br><br>**DEFENDANT CROCS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT AS DUPLICATIVE OR FOR FAILURE TO STATE A CLAIM (FED. R. CIV. P. 12(b)(6) & 9(b))** |

# TABLE OF CONTENTS

**Page**

MOTION TO DISMISS .......................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................... 1

I.    BACKGROUND. ......................................................................................... 3

    A.    The Patents. .................................................................................. 3

    B.    The Prior Proceedings Between Crocs and Dawgs or its Privies. ... 4

    C.    The ITC and The Federal Circuit Found Crocs's Patents Valid And Infringed. .......................................................... 4

    D.    The ITC Also Rejected DDD/Dawgs's Claims Of Inequitable Conduct. ... 5

    E.    Dawgs's Antitrust and State Law Claims In Colorado. .............. 6

    F.    Dawgs Sought And Obtained A Further Stay Of The Colorado Action While Crocs's Motion To Dismiss Its Claims Was Pending. ... 7

    G.    Dawgs Refiles Its Counterclaims Here Seeking To Avoid Its Own Stay And Crocs's Motion To Dismiss. ... 7

II.    ARGUMENT. ............................................................................................ 8

    A.    The Court Should Exercise Its Discretion To Dismiss Dawgs's Duplicative Lawsuit In Its Entirety. ... 8

    B.    Alternatively, The Court Should Dismiss Dawgs's Complaint For Failure To State A Claim Upon Which Relief Can Be Granted. ... 12

        1.    Dawgs Fails To State Antitrust Claims Under *Walker Process*. ... 12

            a.    Dawgs Fails To Plausibly Allege Fraud On The Patent Office. ... 14

            b.    Dawgs Fails To Plausibly Allege That Crocs Has Engaged In "Sham Litigation." ... 15

            c.    Dawgs Fails To Allege Specific Intent To Deceive The PTO And Fails To Allege Materiality. ... 18

        2.    Dawgs Fails To State Claims Under Nevada Law. ... 19

            a.    Dawgs's Claim For Interference With Economic Advantage Is Preempted By Federal Law. ... 20

            b.    Dawgs's Unfair Trade Practices Claim Is Preempted And Barred By The *Noerr-Pennington* Doctrine. ... 21

CONCLUSION .................................................................................................... 21

DEF.'S MOT. TO DISMISS COMPLAINT AS DUPLICATIVE OR UNDER FRCP 12(b)(6) & 9(b)

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abbott Labs. v. Brennan,*
  952 F.2d 1346 (Fed. Cir. 1991) ............................................................ 19, 20

*Adams v. Cal. Dep't of Health Servs.,*
  487 F.3d 684 (9th Cir. 2007), *disapproved in part on other grounds by Taylor v.*
  *Sturgell,* 553 U.S. 880 (2008) ........................................... 1, 8, 9, 10, 11

*Am. Packaging Corp. v. Golden Valley Microwave Foods, Inc.,*
  No. 94-1839, 1995 WL 262522 (E.D. Pa. May 1, 1995) ...................... 10

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .............................................................................. 12

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) .............................................................................. 12

*Boulware v. State of Nev., Dept. of Human Resources,*
  960 F.2d 793 (9th Cir. 1992) ................................................................ 21

*Branch v. Tunnell,*
  14 F.3d 449 (9th Cir. 1994), *overruled on other grounds by*
  *Galbraith v. County of Santa Clara,* 307 F.3d 1119 (9th Cir. 2002) ...... 3

*Brooks Furniture Mfg, Inc. v. Dutailier Int'l, Inc.,*
  393 F.3d 1378 (Fed. Cir. 2005), *holding limited on other grounds as recognized in*
  *Octane Fitness, LLC v. ICON Health & Fitness,* 134 S. Ct. 1749 (2014) ...... 13

*Buckman Co. v. Plaintiffs' Legal Comm.,*
  531 U.S. 341 (2001) .............................................................................. 19

*Calvert v. Alessi & Koenig, LLC,*
  No. 2:11-cv-333-LRH-PAL, 2013 WL 3833053 (D. Nev. July 22, 2013) ...... 9, 10

*Clements v. Airport Auth. of Washoe County,*
  69 F.3d 321 (9th Cir. 1995) .................................................................... 8

*Coakley & Booth, Inc. v. Baltimore Contractors, Inc.,*
  367 F.2d 151 (2d Cir. 1966) .................................................................. 11

*Cornucopia Prods., LLC v. Dyson, Inc.,*
  881 F. Supp. 2d 1086 (D. Ariz. July 27, 2012) .................................... 14

*Costantini v. Trans World Airlines,*
  681 F.2d 1199 (9th Cir. 1982) ................................................................ 9

*C.R. Bard, Inc. v. M3 Sys.,*
  157 F.3d 1340 (Fed. Cir. 1998) ............................................................ 17

*Crocs, Inc. v. ITC,*
  598 F.3d 1294 (Fed. Cir. 2010) .......................................... 4, 5, 14, 18, 19

- i -

*Darba Enters., Inc. v. Amica Mut. Ins. Co.*,
   No. 2:12-cv-00043-LRH-GWF, 2012 WL 3096709 (D. Nev. July 30, 2012)  15, 16

*Eon Labs. Inc. v. SmithKline Beecham Corp.*,
   298 F. Supp. 2d 175 (D. Mass. 2003)  10

*ESCO Corp. v. Cashman Equip. Co.*,
   No. 2:12-cv-1545-RCJ-NJK, 2013 WL 4710258 (D. Nev. Aug. 30, 2013)  10, 11

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
   575 F.3d 1312 (Fed. Cir. 2009)  14, 15

*Glass Equip. Dev., Inc. v. Besten, Inc.*,
   174 F.3d 1337 (Fed. Cir. 1999)  13

*Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*,
   362 F.3d 1365 (Fed. Cir. 2004)  20, 21

*GP Indus., Inc. v. Eran Indus., Inc.*,
   500 F.3d 1369 (Fed. Cir. 2007)  20

*Hunter Douglas, Inc. v. Harmonic Design, Inc.*,
   153 F.3d 1318 (Fed. Cir. 1998), *overruled on other grounds by Midwest
   Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir.1999)  19, 20

*iLOR, LLC v. Google, Inc.*,
   631 F.3d 1372 (Fed. Cir. 2011)  13, 16

*In re BP Lubricants USA Inc.*,
   637 F.3d 1307 (Fed. Cir. 2011)  14

*In re Certain Foam Footwear*,
   Inv. No. 337-TA-567 (ITC Feb. 9, 2011) (remand proceeding), *available at* 2011 WL
   1208941  5, 14, 19

*In re Certain Foam Footwear*,
   Inv. No. 337-TA-567 (ITC Apr. 11, 2008), available at 2008 WL 1855922  4, 5, 16

*In re Certain Foam Footwear*,
   Inv. No. 337-TA-567, USITC Pub. 4260 (ITC Oct. 1, 2011) (final), *available at* 2011
   WL 5997932  6

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*,
   342 U.S. 180 (1952)  11

*Mack v. S. Bay Beer Distribs., Inc.*,
   798 F.2d 1279 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. & Sav. Loan
   Ass'n v. Solimino*, 501 U.S. 104 (1991)  3

*Medimmune, Inc. v. Genentech, Inc.*,
   427 F.3d 958 (Fed. Cir. 2005), *rev'd on other grounds*, 549 U.S. 118 (2007)  13

*Metris U.S.A., Inc. v. Faro Techs., Inc.*,
   882 F. Supp. 2d 160 (D. Mass. 2011)  14

DEF.'S MOT. TO DISMISS COMPLAINT AS DUPLICATIVE OR UNDER FRCP 12(b)(6) & 9(b)

*Molins PLC v. Textron, Inc.*,
48 F.3d 1172 (Fed. Cir. 1995) ............................................................. 18

*Moulton v. Eugene Burger Mgmt. Corp.*,
No. 3:08-cv-00253-BES-RAM, 2009 WL 268383 (D. Nev. Feb. 3, 2009) .... 9, 10, 11

*N. Telecom v. Datapoint Corp.*,
908 F.2d 931 (Fed. Cir. 1990) ............................................................. 17

*Nobelpharma AB v. Implant Innovations, Inc.*,
141 F.3d 1059 (Fed. Cir. 1998) ..................................................... 13, 15, 18

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
508 U.S. 49 (1993) ......................................................... 2, 3, 15, 16, 17

*Rohm & Haas Co. v. Brotech Corp.*,
770 F. Supp. 928 (D. Del. 1991) ......................................................... 10

*SAP America, Inc. v. Purple Leaf, LLC*,
No. C 11–4601 PJH, 2012 WL 2237995 (N.D. Cal. June 15, 2012) ............ 15

*Seiko Epson Corp. v. Glory South Software Mfg., Inc.*,
684 F. Supp. 2d 1231 (D. Or. 2010) ..................................................... 16

*Sosa v. DIRECTV, Inc.*,
437 F.3d 923 (9th Cir. 2006) ............................................................. 20

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir.), *amended*, 275 F.3d 1187 (9th Cir. 2001) ............... 12

*The Haytian Republic*,
154 U.S. 118 (1894) ....................................................................... 9

*Therasense, Inc. v. Becton, Dickinson & Co.*,
649 F.3d 1276 (Fed. Cir. 2011) (en banc) ........................................ 14, 18

*Va. Panel Corp. v. MAC Panel Co.*,
133 F.3d 860 (Fed. Cir. 1997) ........................................................... 20

*Virtue v. Creamery Package Mfg. Co.*,
227 U.S. 8 (1913) ......................................................................... 20

*Wagenaar v. Robison*,
No. 2:13-cv-1202-APG-PAL, 2014 WL 4206703 (D. Nev. Aug. 22, 2014) ...... 13

*Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*,
382 U.S. 172 (1965) ....................................................................... 13

*Zenith Elecs. Corp. v. Exzec, Inc.*,
182 F.3d 1340 (Fed. Cir. 1999) ........................................................... 20

DEF.'S MOT. TO DISMISS COMPLAINT AS DUPLICATIVE OR UNDER FRCP 12(b)(6) & 9(b)

1

## Statutes and Rules

2

19 U.S.C. § 1337 ................................................................... 4, 6

3

28 U.S.C. § 1659 ...................................................................... 4

4

35 U.S.C. § 287 ...................................................................... 20

5

Fed. R. Civ. P.
   9(b) ......................................................... 1, 2, 6, 12, 13, 14
6
   11 ..................................................................................... 17
   12(b)(6) ............................................................ 1, 2, 6, 12
7
   13(a)(1)(A) ..................................................................... 10

8

Fed. R. Evid. 201 .................................................................... 3

9

Nev. Rev. Stat.
   ch. 598A ........................................................................ 21
10
   § 598A.050 .................................................................... 21

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MOTION TO DISMISS

Pursuant to the Court's discretion to dismiss duplicative actions, as well as Federal Rules of Civil Procedure 12(b)(6) and 9(b), Defendant Crocs, Inc. ("Crocs"), by and through its counsel of record, moves for dismissal of Plaintiff's Complaint for two reasons.  First, the Complaint is duplicative of an earlier-filed action now pending in the District of Colorado that involves essentially the same facts, causes of action and parties, and this Complaint should be dismissed under *Adams v. California Department of Health Services*, 487 F.3d 684 (9th Cir. 2007).  Second, the Complaint fails to state a claim upon which relief can be granted under either the federal antitrust laws or Nevada state law.  Either basis is sufficient to warrant the dismissal of Dawgs's entire complaint.

This Motion is based upon the attached Memorandum of Points and Authorities, the papers and pleadings on file with the Court in this matter, and such oral argument on the Motion as the Court may allow.

## MEMORANDUM OF POINTS AND AUTHORITIES

As discussed in Crocs's earlier-filed Special Motion to Dismiss under the Nevada anti-SLAPP law (Dkt. No. 5), Crocs has been in litigation with Plaintiff U.S.A. DAWGS, INC. ("Dawgs") and its affiliates since 2006.  Where both the Federal Circuit and the International Trade Commission have ruled in favor of Crocs regarding the validity and enforceability of Crocs's patents, as well as on its claims of infringement against Dawgs and its affiliates, Dawgs' claims are properly dismissed under Rule 12(b) for the same reasons they violate the anti-SLAPP statutes—not only is Crocs's enforcement of its patents a protected activity, but Dawgs's adjudged infringement of valid and enforceable patents makes Dawgs's claims of sham litigation meritless as a matter of law.

However, Dawgs' claims are also properly dismissed on a threshold issue.  One of the protected activities of which Dawgs complains is a patent infringement action that Crocs filed in 2006 against Dawgs's affiliate in the District of Colorado (the "Colorado Action" or "Colo. Action").  In 2012, the Colorado Court ruled in favor of Crocs and permitted Crocs to add Dawgs as an affiliated party to that matter.  When Dawgs was added to the Colorado Action, Dawgs filed

- 1 -

federal antitrust claims and state law claims against Crocs that legally duplicate, and are based on, the same transactional allegations as Dawgs's claims here. Crocs sought dismissal of Dawgs's counterclaims in Colorado but, before Crocs's motion was adjudicated, Dawgs sought and obtained a stay of the Colorado Action based on a co-pending request that the U.S. Patent Office ("PTO") reexamine Crocs's patents.

With proceedings before the PTO ongoing and the stay still in place in the Colorado Action, by this action, Dawgs has now attempted to jump the queue by filing a Complaint in its home state that duplicates its Colorado counterclaims. The Court should apply clear Ninth Circuit precedent and hold that Dawgs's Complaint—a transparent effort to end-run the stay and Crocs's motion to dismiss in the Colorado Action—has no business in this Court. The Court should dismiss Dawgs's federal antitrust claims and, to the extent they survive Crocs's Special Motion to Dismiss, Dawgs's two state law claims as well.

In the alternative, should the Court opt to examine the legal sufficiency of Dawgs's claims, it should dismiss each claim for failure to state a claim under Rules 12(b)(6) and 9(b), and also because Crocs is entitled to immunity under the *Noerr-Pennington* doctrine. While Dawgs repeatedly asserts that Crocs's patents are invalid or unenforceable due to misrepresentations and omissions in the PTO, Dawgs has already made the same assertions of alleged bad conduct before. Dawgs's claims that Crocs acted wrongfully on invalid patents have been rejected by the International Trade Commission and the Federal Circuit after consideration of the *same facts* pleaded by Dawgs in its Complaint. Because Crocs has prevailed on the exact underlying claims before, Dawgs simply cannot make out an antitrust claim. Specifically, in order to prevail, Dawgs would have to show (among other things) that Crocs sought to enforce patents that it knew were invalid or unenforceable. But Dawgs cannot make such a showing, because the Federal Circuit and the ITC have rejected that the exact same facts (that Dawgs alleges show that Crocs should have known that its patents were no good) actually render Crocs's patents invalid or unenforceable. Thus, Crocs cannot be acting in bad faith or conducting sham litigation. As explained by the Supreme Court, "[a] winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham." *See Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,

- 2 -

508 U.S. 49, 60 n.5 (1993).  Not only did Crocs prevail on its infringement claims, but the validity and enforceability of Crocs's patents has also been affirmed by prior adjudicative bodies.  For this reason, Dawgs cannot show that Crocs knew or should have known that its patents were invalid.

Finally, each of Dawgs's state law claims is preempted by federal patent law and barred by *Noerr-Pennington* immunity.  Because Dawgs states no valid claims under either federal antitrust law or state law, its Complaint should be dismissed in its entirety.

## I.   BACKGROUND.

### A.   The Patents.

Crocs owns, as assignee, U.S. Patent Nos. 6,993,858 (the "'858 patent") and D517,789 (the "'789 patent"; collectively, "the Patents"), each of which names Scott Seamans as the inventor. Compl. ¶¶15, 20.

The '858 patent issued on February 7, 2006, and claims priority to May 23, 2003 through provisional application Nos. 60/473,360 and 60/473,371.  Declaration of Michael A. Berta In Support of Crocs, Inc.'s Special Motion To Dismiss ("Berta Decl.") (Dkt. No. 5-1), Ex. A.[1]  The '858 patent lists, as prior art considered by the Examiner, publications relating to shoes manufactured by Finproject as well as footwear named "Waldies," a branded version of the Aqua Clog shoe.  *Id.* at 1-2.

The '789 patent issued on March 28, 2006, is based on a continuation-in-part of application No. 10/603,126, and claims priority to June 23, 2003.  Berta Decl. Ex. B.  It has one claim of seven figures, and claims an ornamental footwear design as depicted in those figures.  The '789 patent

---

[1] Where possible, Crocs provides citations to Dawgs's Complaint.  Because the patents are integral to the Complaint and are official documents that are not reasonably susceptible to dispute, the Court should consider them in connection with this Motion.  *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) ("documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss"), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).  The Court should also take judicial notice of "matters of public record" under Federal Rule of Evidence 201 (*see Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. & Sav. Loan Ass'n v. Solimino*, 501 U.S. 104 (1991)), namely, decisions by the International Trade Commission and Federal Circuit, as well as pertinent materials filed in the Colorado Action.

similarly lists as considered by the Examiner publications relating to the Finproject/Waldies "Aqua Clog" shoes. *Id.* at 1–2.

### B.    The Prior Proceedings Between Crocs and Dawgs or its Privies.

On March 31, 2006, Crocs filed a complaint with the U.S. International Trade Commission ("ITC") under Section 337 of the Tariff Act of 1930, 19 U.S.C. §1337, based on the unlawful importation and sale of certain foam footwear products infringing the Patents by a variety of entities, including Double Diamond Distribution, Ltd. ("DDD"), a Canadian entity manufacturing shoes bearing the trade name "Dawgs" (the "ITC Action").   Compl. ¶25.

Because the ITC is empowered to issue injunctive relief, and not damages, Crocs also initiated a lawsuit against a number of entities in the District Court for the District of Colorado in April 2006 seeking additional remedies based on their infringement of the Patents by importation and sale of knockoff products. *Crocs, Inc. v. Chengs' Enters., Inc., et al.*, Civ. No. 06-605 (D. Colo.); *see also* Compl. ¶26.   The Colorado Action was stayed on May 16, 2006 while the ITC Action proceeded pursuant to 28 U.S.C. §1659.   Colo. Action Dkt. No. 31.

### C.    The ITC and The Federal Circuit Found Crocs's Patents Valid And Infringed.

The ITC ALJ found that Crocs's '789 patent was valid and that Crocs's '858 Patent was infringed.   However, the ALJ also found that the '789 patent was not infringed and the '858 patent was invalid, leading to a determination of no violation of the federal trade laws. *In re Certain Foam Footwear*, Inv. No. 337-TA-567 (ITC Apr. 11, 2008) (initial), *available at* 2008 WL 1855922, at *61–62.   The ITC determination was appealed to the Federal Circuit.   The Federal Circuit reversed the ITC's negative determinations, and held, among other things, that (1) DDD's Dawgs shoe did infringe the '789 patent; and (2) the '858 patent was valid. *Crocs, Inc. v. ITC*, 598 F.3d 1294, 1306, 1311 (Fed. Cir. 2010).

The ITC and the Federal Circuit addressed and rejected all of the invalidity arguments now raised by Dawgs here as so-called evidence that Crocs knew its patents were invalid.   For example, among other things, the ITC ALJ expressly rejected the argument that the '789 patent was invalid due to an alleged prior public use or sale. *In re Certain Foam Footwear*, Inv. No. 337-TA-567 (ITC Apr. 11, 2008) (initial), *available at* 2008 WL 1855922, at *58–59.   The ITC also found the '789

DEF.'S MOT. TO DISMISS COMPLAINT AS DUPLICATIVE OR UNDER FRCP 12(b)(6) & 9(b)

patent valid over the Aqua Clog reference. *Id.* at *60.  Similarly, the Federal Circuit, in its decision

regarding the '858 patent, specifically found that the so-called Aqua Clog prior art reference did not

invalidate the '858 patent either, and reversed the ITC's decision holding that the '858 patent was

invalid. *Crocs*, 598 F.3d at 1308–11.

### D.     The ITC Also Rejected DDD/Dawgs's Claims Of Inequitable Conduct.

Upon remand from the Federal Circuit's determination that Crocs's patents were valid and

infringed, ITC Administrative Law Judge Charles E. Bullock ruled that Crocs <u>had not</u> engaged in

any inequitable conduct before the PTO in its prosecution of the Patents, which he characterized as

"the only issue" then left before him. *In re Certain Foam Footwear*, Inv. No. 337-TA-567 (ITC

Feb. 9, 2011) (remand proceeding), *available at* 2011 WL 1208941, at *2 ("ALJ Enforceability

Determination").  Specifically, the ALJ Enforceability Determination rejected the argument

advanced by DDD that Crocs had misled the Examiner by failing to disclose that

> [t]he shoes pictured on the webpage printout [of the Aqua Clog, submitted as prior art by Crocs] are identical to the base of the shoe claimed in the '789 and '858 patents; Ettore Battiston . . . , not Mr. Seamans, invented the shoes pictured on the webpage; [and] Finproject had been selling the shoes pictured on the webpage in the U.S. for more than a year prior to the filing of the application . . . ." (*Id.* at *4[2])

The ALJ agreed with Crocs and ITC Staff that "the disclosure of the Aqua Clog appeared on the

face of the '858 Patent as a cited reference" (*id.* at *6); that DDD "[had] not clearly and

convincingly demonstrated that Crocs withheld any material prior art, including but not limited to

the Aqua Clog" (*id.* at *8); that "[t]he crux of [DDD's] argument is predicated on Crocs's alleged

non-disclosure of the Aqua Clog, yet the evidence clearly demonstrates that Crocs *did*, in fact,

disclose this reference to the PTO" and "[b]y doing so, Crocs discharged its duty of disclosure with

respect to the Aqua Clog" (*id.* at *14 (emphasis in original)); and concluding "[q]uite simply, there

is *no* evidence to suggest that *any* person involved in the prosecution of the '858 patent intended to

deceive the PTO" (*id.* (emphases added)).  The ALJ found that the same conclusions held for the

'789 patent. *Id.* at *15.

---

[2] Dawgs's allegations here are nearly identical. *See* Compl. ¶¶16-21.

1    Subsequently, on July 15, 2011, the ITC issued a Final Commission Determination of

2    Violation ("ITC Final Determination"), finding that various defendants, including DDD, had

3    violated 19 U.S.C. §1337 by importing shoes that infringed valid U.S. Patents.  The ITC noted that

4    the decisions of the Commission, "along with the Federal Circuit's decision, resulted in a finding of

5    a violation of section 337 with respect to both asserted patents by Double Diamond . . . ." *In re*

6    *Certain Foam Footwear*, Inv. No. 337-TA-567, USITC Pub. 4260 (ITC Oct. 1, 2011) (final),

7    *available at* 2011 WL 5997932, at *3.

8         **E.**    **Dawgs's Antitrust and State Law Claims In Colorado.**

9    On May 9, 2012, the stay in the Colorado Action was lifted, the case was reactivated, and

10   Crocs filed an amended complaint to name Dawgs (which was incorporated in Nevada on June 28,

11   2006, after the initial stay was entered in the Colorado action) as a defendant.  The court allowed

12   Crocs's amendment.  Colo. Action Dkt. No. 103.

13   Dawgs answered Crocs's complaint on August 31, 2012, and asserted nine counterclaims.

14   *Id.* Dkt. No. 119.  In its pleading, Dawgs again advanced the arguments that had been rejected by

15   the ITC, namely that Crocs had engaged in inequitable conduct for making "fraudulent statements

16   and/or intentional and material omissions in the prosecution of the '858 patent and the '789 patent."

17   *Id.* Dkt. No. 119 at 17 ¶40.  Specifically, Dawgs asserted that Crocs failed to disclose: (1) that Mr.

18   Seamans was not the inventor of Crocs's shoe (*id.* at 13 ¶¶21(a), (c)); (2) the existence of several

19   items of prior art (including the "Aqua Clog," the "Waldies" shoe, and shoes marketed as "Holey

20   Soles") (*id.* at 13–14 ¶¶21(b), (e), (f)); and (3) the sales and marketing of shoes similar to those

21   depicted in Crocs's patents more than one year before the patents' filing dates (*id.* at 13–14

22   ¶¶21(d)–(h)).  Incorporating these allegations by reference, Dawgs asserted claims under Section 2

23   of the Sherman Act for monopolization and attempted monopolization (*id.* at 15–16 ¶¶23–36) based

24   on Crocs's "patent misuse, inequitable conduct and other anticompetitive conduct outlined herein"

25   (*id.* at 15 ¶28).  Dawgs also brought state law claims for deceptive trade practices and intentional

26   interference with business advantage.  *Id.* at 16–18 ¶¶37–49.

27   Crocs moved to dismiss Dawgs's counterclaims on October 1, 2012 under Federal Rules of

28   Civil Procedure 12(b)(6) and 9(b), and because the counterclaims targeted activity protected by

Crocs's right to petition and the *Noerr-Pennington* doctrine. *Id.* Dkt. No. 131 at 4–12. Namely, Dawgs's allegations of "sham litigation" failed because Crocs had *prevailed* on its claims before the ITC, making Crocs's claims objectively reasonable. *Id.* at 10–11. Crocs also showed that Dawgs's state law claims were subject to dismissal because they were preempted by federal patent law and inadequately pleaded. *Id.* at 12–15.

### F.   Dawgs Sought And Obtained A Further Stay Of The Colorado Action While Crocs's Motion To Dismiss Its Claims Was Pending.

In August 2012, DDD filed a request with the PTO for *inter partes* reexamination of the '858 patent, which was denied. Berta Decl. Ex. C (PTO Reexamination No. 95/002,064). Also in August 2012, Dawgs filed a request for *inter partes* reexamination with the PTO as to the '789 patent. The PTO has instituted reexamination proceedings as to that patent only, which proceedings have focused on whether the design disclosed in the '789 patent was anticipated by an earlier disclosure of the shoe on the Crocs website. *See* Compl. ¶31.

Dawgs moved to stay the Colorado Action due to the reexamination requests (Colo. Action Dkt. No. 118), which Crocs opposed (*id.* Dkt. No. 127). Due to the PTO's decision to reexamine the '789 patent, the court stayed the Colorado Action. *Id.* Dkt. No. 137. Dawgs informed the court that, in light of the stay, it would not respond to Crocs's motion to dismiss, but purportedly reserved the right to do so "if and when the stay is lifted." *Id.* Dkt. No. 138 at 1.

Reexamination proceedings for the '789 patent remain pending before the PTO. The Colorado Action remains stayed.

### G.   Dawgs Refiles Its Counterclaims Here Seeking To Avoid Its Own Stay And Crocs's Motion To Dismiss.

Dawgs's claims in this case mirror its claims in Colorado. In Colorado, Dawgs filed two Sherman Act § 2 claims alleging monopolization and attempted monopolization of the market of "ethyl vinyl acetate ventilated clog-type shoes sold in the United States." Colo. Action Dkt. No. 119 at 15 ¶24. It filed two identical claims here, along with a Clayton Act claim on the same set of facts. Compl. ¶40 (defining relevant markets as "[ethyl vinyl acetate] fully molded ventilated clog-type casual footwear"); *id.* ¶¶38–88 (asserting claims for monopolization and attempted

1    monopolization under Sherman Act § 2 and Clayton Act § 3). Dawgs also filed two state law

2    claims in Colorado. Colo. Action Dkt. No. 119 at 16–18 ¶¶37–49. Dawgs's state law claims here

3    are properly dismissed under Nevada's anti-SLAPP law (*see* Dkt No. 5) but, even if they were not,

4    they are also based on the same nucleus of facts as Dawgs's federal and state law claims in

5    Colorado. *See* Compl. ¶¶90, 98.

6    **II.    ARGUMENT.**

7         Under controlling law, Dawgs's lawsuit here is duplicative of its counterclaims pending

8    against Crocs in the Colorado Action, which were stayed *at Dawgs's own request*. Because Dawgs

9    has violated the Ninth Circuit's rule against splitting duplicative claims, this Court should exercise

10   its discretion to dismiss Dawgs's entire Complaint.

11        In the alternative, the Court should dismiss each of Dawgs's claims for failure to state a

12   claim. Like its state law claims, Dawgs's antitrust claims are a retaliatory measure designed to

13   punish Crocs for obtaining patents and suing Dawgs, for which Crocs is entitled to *Noerr-*

14   *Pennington* immunity. Dawgs has not pled—and cannot plead—fraud and bad faith with the

15   particularity required to overcome the presumption that Crocs's litigation conduct has been a good-

16   faith effort to vindicate its patent rights. Moreover, Dawgs's state law claims are preempted by

17   federal law. Consequently, Dawgs's entire complaint is subject to dismissal.

18
         **A.    The Court Should Exercise Its Discretion To Dismiss Dawgs's Duplicative**
19            **Lawsuit In Its Entirety.**

20        With this lawsuit, Dawgs raises the *same claims*, against the *same party*, based on the *same*

21   *underlying facts* as its antitrust and state law counterclaims in the Colorado Action. The Court

22   should not abide Dawgs's effort to game the stay *entered at own its request* in Colorado by

23   maintaining this duplicative suit. The proper remedy for Dawgs's improper claim splitting is

24   dismissal of the Complaint in its entirety.

25        The bar against claim splitting protects a "defendant from being harassed by repetitive

26   actions based on the same claim." *Clements v. Airport Auth. of Washoe County*, 69 F.3d 321, 328

27   (9th Cir. 1995) (citation omitted). The Court therefore should dismiss suits that duplicate claims

28   previously filed in other courts. *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir.

2007), *disapproved in part on other grounds by Taylor v. Sturgell*, 553 U.S. 880, 904 (2008).  A

complaint is duplicative where "the causes of action and relief sought, as well as the parties or

privies to the action, are the same." *Adams*, 487 F.3d at 689 (citing *The Haytian Republic*, 154 U.S.

118, 124 (1894)).

Under the Ninth Circuit's "transaction test," the claims in Dawgs's Complaint are identical

to its antitrust and state law claims in the Colorado Action.  *See id.* at 689.  The transaction test

entails examination of:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Id.* (citing *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201–02 (9th Cir. 1982)).  The fourth

factor is the most important.  *Id.*

Beginning with the critical fourth factor, there can be no doubt that this suit arises from the

same "transactional nucleus of facts" as Dawgs's Colorado counterclaims.  In each case, Dawgs

asserts that Crocs made the same alleged misrepresentations and omissions in the PTO concerning

prior art and inventorship, thereby obtaining patents that Crocs used for anticompetitive purposes—

namely, to sue Dawgs.  *Compare* Compl. ¶¶38–88, *with* Colo. Action Dkt. No. 119 at 15–16 ¶¶23–

36.  The same allegations also underlie Dawgs's claims both in Colorado and before this Court that

Crocs misused its patents to monopolize or attempt to monopolize the relevant market and to

orchestrate exclusionary arrangements.  *See Calvert v. Alessi & Koenig, LLC*, No. 2:11-cv-333-

LRH-PAL, 2013 WL 3833053, at *2 (D. Nev. July 22, 2013) (holding that plaintiff's four

complaints for damages under the Fair Debt Collection Practices Act arose out of the same

"transactional nucleus of facts" where each complaint "relates to the same debt and the same effort

to collect that debt"); *Moulton v. Eugene Burger Mgmt. Corp.*, No. 3:08-cv-00253-BES-RAM, 2009

WL 268383, at *5 (D. Nev. Feb. 3, 2009) (finding plaintiff's two actions stemming from the same

alleged illegal assessment and seeking the same relief shared "common transactional nucleus of

fact").  Dawgs was obligated to, and did, assert its antitrust and state law claims as compulsory

counterclaims to Crocs's patent infringement allegations in the Colorado Action; it should not be

1    allowed to duplicate those claims in this forum. *See* Fed. R. Civ. P. 13(a)(1)(A) (requiring that a

2    claim against an opposing party be brought as a counterclaim if it "arises out of the transaction or

3    occurrence that is the subject matter of" an existing claim); *ESCO Corp. v. Cashman Equip. Co.*,

4    No. 2:12-cv-1545-RCJ-NJK, 2013 WL 4710258, at *2 (D. Nev. Aug. 30, 2013) (applying *Adams*;

5    holding that claim filed in Nevada was an improper effort to circumvent requirement that

6    counterclaim be brought in earlier-filed suit in Illinois).[3]

7            The other factors of the transaction test likewise all show that this case is duplicative. *First*,

8    any judgment in the Colorado Action would destroy or impair the rights and interests that Dawgs

9    now asserts. *See Adams*, 487 F.3d at 689. The central issue to Dawgs's claims in either case is

10   whether Crocs violated the antitrust laws by knowingly engaging in bad-faith conduct to procure

11   and enforce its patents. Should the Colorado court decide this adversely to Dawgs, it will be *res*

12   *judicata* on each of Dawgs's claims here. *Second*, given the total overlap in the nucleus of facts in

13   the two cases, any evidence that Dawgs might offer in Colorado would necessarily be germane here.

14   *Third*, because Dawgs's antitrust claims in both cases arise from "a common transactional nucleus

15   of facts," it cannot obtain multiple recoveries for the same wrong. *See id.* at 689, 691 (citation

16   omitted); *Calvert*, 2013 WL 3833053, at *2 (plaintiff's four complaints addressed separate

17   communications from defendant with respect to plaintiff's debt but all concerned the same

18   "transactional nucleus of facts"; held, plaintiff was entitled to one recovery); *Moulton*, 2009 WL

19   268383, at *5 (dismissing complaint; "[t]he claims in Plaintiff's complaint in this action arise out of

20

21   [3] Dawgs's bare assertion that its Colorado claims are "non-compulsory" (Compl. ¶27) is incorrect as
22   a matter of law. In the Colorado Action, Dawgs alleged anticompetitive conduct due to Crocs's
     fraud and "inequitable conduct" in the PTO and Crocs's ensuing "patent misuse" (*i.e.*, Crocs's
23   district court patent lawsuit in Colorado, including the Colorado lawsuit in which Dawgs's
     advanced its counterclaims). Colo. Action Dkt. No. 119 at 15 ¶28. Therefore, Dawgs was obliged
24   to (and did) bring its antitrust claims in response to Crocs's patent infringement action that Dawgs
     was alleging was anticompetitive. *See Eon Labs. Inc. v. SmithKline Beecham Corp.*, 298 F. Supp.
25   2d 175, 181-82 (D. Mass. 2003) (plaintiff's federal antitrust claims alleging enforcement of invalid
     patent were barred by compulsory counterclaim rule because plaintiff had failed to assert claims
26   during a patent infringement action); *Am. Packaging Corp. v. Golden Valley Microwave Foods,
     Inc.*, No. 94-1839, 1995 WL 262522, at *4 (E.D. Pa. May 1, 1995) ("*Walker Process* claims are
27   compulsory counterclaims to patent infringement suits, because the *Walker Process* claims are
     based on allegations of fraud before the Patent Office, which is an issue often raised during patent
28   infringement suits."); *Rohm & Haas Co. v. Brotech Corp.*, 770 F. Supp. 928, 935 (D. Del. 1991)
     (antitrust action was compulsory counterclaim to prior patent infringement suit).

DEF.'S MOT. TO DISMISS COMPLAINT AS DUPLICATIVE OR UNDER FRCP 12(b)(6) & 9(b)

the same transactional nucleus of facts asserted in her first action and the rights established by a judgment in the first action would be destroyed or impaired by a judgment in the present action"). Because of the rule against multiple recovery, the fact that Dawgs has pleaded a Clayton Act claim here, but not in Colorado, does not make this lawsuit any less duplicative. The same holds true of Dawgs's near-identical state law claims. Even if Dawgs were to show an independent basis for recovery under Nevada law, Crocs has already demonstrated that Dawgs's state law claims target protected petitioning conduct and should be dismissed for that independent reason. *See* Dkt. No. 5.

In sum, the Complaint fulfills every factor of the "transaction test" and duplicates entirely the counterclaims Dawgs filed two years ago in the Colorado Action. Because Dawgs and Crocs are parties to that action, their respective rights can and should be adjudicated there. *See Adams*, 487 F.3d at 691–92; *ESCO*, 2013 WL 4710258, at *2; *Moulton*, 2009 WL 268383, at *6. While the Court has discretion to dismiss, transfer or stay these proceedings, "[d]ismissal of the duplicative lawsuit, more so than the issuance of a stay or the enjoinment of proceedings, promotes judicial economy and the 'comprehensive disposition of litigation.'" *Adams*, 487 F.3d at 692–93 (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)). The equities here weigh especially strongly in favor of dismissal, given that Dawgs requested a stay—over Crocs's objection—in the Colorado Action pending the outcome of reexamination of the '789 patent. The PTO has not issued a final determination, and consequently, the stay in Colorado has not been lifted or modified. Anything short of dismissal here would signal that a litigant is free to do whatever it takes to stay a case against it in one forum and then obtain adjudication of its compulsory counterclaims in a preferred forum. *See Coakley & Booth, Inc. v. Baltimore Contractors, Inc.*, 367 F.2d 151, 153 (2d Cir. 1966) (second action brought by defendant in earlier filed case was improper attempt to circumvent first court's control of the dispute where claims could be fully litigated in that action; held defendant properly enjoined from filing second action). The Court should dismiss Dawgs's complaint in its entirety without leave to amend or re-file in favor of allowing the first-filed Colorado Action to proceed.

**B.    Alternatively, The Court Should Dismiss Dawgs's Complaint For Failure To State A Claim Upon Which Relief Can Be Granted.**

The duplicative nature of Dawgs's claims gives the Court sufficient grounds to dismiss Dawgs's entire Complaint.  However, should the Court be inclined to examine Dawgs's claims on the merits, the Court will find no such merit—every single cause of action is independently subject to dismissal for failure to state a claim.  Dawgs's Complaint only asserts facts that have been decided adversely to it.  Its antitrust claims fail because fraud, bad faith and materiality are not pleaded with the requisite particularity, and Dawgs cannot show that Crocs should be stripped of *Noerr-Pennington* antitrust immunity for engaging in "sham litigation."  Due to the same failures of pleading, Dawgs's state law claims are preempted and barred by federal law.

To survive a motion to dismiss pursuant to Rule 12(b)(6), a claimant must plead facts sufficient to establish "plausible" liability.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).  Dawgs must provide "more than labels and conclusions" (*id.* at 555), and instead "nudge[] [its] claims across the line from conceivable to plausible" (*id.* at 570).  Conclusory allegations, unwarranted deductions of fact, or unreasonable inferences do not suffice.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *amended*, 275 F.3d 1187 (9th Cir. 2001).  "[A] formulaic recitation of the elements of a cause of action will not do" (*Twombly*, 550 U.S. at 555), nor can the plaintiff avoid dismissal merely because it "might later establish some set of undisclosed facts" that remedy the shortcomings of its pleading (*id.* at 561).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  The standard is even higher when a plaintiff alleges fraud.  *See* Fed. R. Civ. P. 9(b) (requiring that fraud be pled with "particularity").

**1.    Dawgs Fails To State Antitrust Claims Under *Walker Process*.**

As discussed in Crocs's Special Motion to Dismiss (Dkt. No. 5), Dawgs's state law claims are were an improper attempt to punish Crocs for petitioning activity before federal agencies and courts, and for which Crocs is immune from suit.  Similarly, under the *Noerr-Pennington* doctrine, Crocs enjoys First Amendment immunity from federal antitrust claims based on its petitioning

conduct in courts and agencies. *See Glass Equip. Dev., Inc. v. Besten, Inc.*, 174 F.3d 1337, 1343 (Fed. Cir. 1999) (noting that the *Noerr-Pennington* doctrine prevents parties from bringing antitrust claims based on a patent holder's enforcement of its rights); *see also Wagenaar v. Robison*, No. 2:13-cv-1202-APG-PAL, 2014 WL 4206703, at *3 (D. Nev. Aug. 22, 2014) ("The principals behind Nevada's anti-SLAPP statute and the *Noerr–Pennington* doctrine are essentially the same. Both are grounded in the rights of petition and free speech under the state and federal constitutions, and both provide a privilege against suit if the basis of that suit is good-faith communication made to any department of the government to petition for redress.") (citations omitted).  And because the gravamen of Dawgs's claims is the anticompetitive use of patents rights, the Court begins with the "presumption that the assertion of infringement of a duly granted patent is made in good faith." *iLOR, LLC v. Google, Inc.*, 631 F.3d 1372, 1377 (Fed. Cir. 2011) (citing *Brooks Furniture Mfg, Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1382 (Fed. Cir. 2005), *holding limited on other grounds as recognized in Octane Fitness, LLC v. ICON Health & Fitness*, 134 S. Ct. 1749, 1754 (2014)).

Federal courts recognize a narrow exception to *Noerr-Pennington* immunity in so-called *Walker Process* claims. *See Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 174 (1965).  To state a *Walker Process* claim, the plaintiff must adequately allege all elements of an antitrust claims as well as the following: (1) the patent at issue was procured by knowing or willful fraud on the Patent Office; (2) the defendant was aware of the fraud when enforcing the patent; (3) intent to deceive the examiner; and (4) the patent would not have issued but for the misrepresentation or omission.[4] *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1068–71 (Fed. Cir. 1998).  *Walker Process* claims must satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9(b). *Medimmune, Inc. v. Genentech, Inc.*, 427 F.3d 958, 967 (Fed. Cir. 2005), *rev'd on other grounds*, 549 U.S. 118 (2007).  A defendant's good faith suffices to "furnish a complete defense." *Walker Process*, 382 U.S. at 177.  Dawgs's antitrust claims fail to meet any of the elements of the *Walker Process* standard.

---

[4] While the other elements of the antitrust violation are governed by Ninth Circuit law, whether there was fraud on the Patent Office is governed by Federal Circuit law. *Nobelpharma*, 141 F.3d at 1068.

### a.   Dawgs Fails To Plausibly Allege Fraud On The Patent Office.

Dawgs has not alleged fraud on the patent office with particularity, as required by Federal Rule of Civil Procedure 9(b).  In order to plead fraud or inequitable conduct before the PTO, Dawgs "must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328 (Fed. Cir. 2009); *see also In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1311 (Fed. Cir. 2011) ("*Exergen*'s pleading requirements apply to all claims under Rule 9(b) . . .").[5]  Not only must Dawgs identify an individual who made a material misrepresentation or omission, Dawgs must also allege that "the individual did so with a specific intent to deceive the PTO." *Exergen*, 575 F.3d at 1327 n.3.

Dawgs alleges that Crocs misled the PTO because Crocs's founder did not disclose prior art to the PTO and wrongly held himself out as the shoe's true inventor.  Compl. ¶¶16–19.  The Federal Circuit, however, has examined the allegedly withheld prior art (the Aqua Clog), and held that its existence does not render Crocs's patents invalid.  *See Crocs*, 598 F.3d at 1308.  Following this determination, the ITC weighed each of the alleged misstatements raised here by Dawgs, and found that Crocs had not committed fraud or inequitable conduct.  ALJ Enforceability Determination, 2011 WL 1208941, at *8, *14–15.  Because it has alleged no new facts in support of its claims of fraud, Dawgs cannot now state a "plausible" claim—based on the same already-rejected facts—that anyone at Crocs had an intent to deceive.  Certainly, Dawgs pleads no facts showing that Crocs's founder believed anything other than that he is the inventor of valid patents (as has been affirmed multiple times) or that Crocs's founder had anything to do with what was specifically disclosed to the PTO one way or the other.

---

[5] The Federal Circuit raised the standards of proof for inequitable conduct in *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1291 (Fed. Cir. 2011) (en banc).  Some courts read *Therasense* to mean that the standards for inequitable conduct and *Walker Process* fraud are now the same, but others do not. *Compare Metris U.S.A., Inc. v. Faro Techs., Inc.*, 882 F. Supp. 2d 160, 174-75 (D. Mass. 2011), *with Cornucopia Prods., LLC v. Dyson, Inc.*, 881 F. Supp. 2d 1086, 1099 n.4 (D. Ariz. July 27, 2012).  Even if the two standards are not treated as equal, for the reasons described above, Dawgs has failed to adequately plead either claim under Rule 9(b).

1   Aside from that, Dawgs has not alleged a *specific* intent to mislead the PTO.  The facts

2   alleged by Dawgs, if accepted as true, would establish only that someone at Crocs gave the PTO

3   supposedly inaccurate information, but not that it acted with the requisite scienter.  Dawgs's

4   frequent incantation of variations on the bare legal conclusion that Crocs made "willful false

5   statements" (*see* Compl. ¶¶19, 20, 22, 23, 26, 28, 32, 35, 45, 46, 47, 50) is unsupported by *any*

6   *specific factual* allegations.  Dawgs cannot bridge the gap from general to specific intent through

7   sheer repetition.  *See Exergen*, 575 F.3d at 1331 (holding that facts must "plausibly suggest [a]

8   *deliberate decision* to withhold a known material reference or to make a *knowingly* false

9   misrepresentation—a necessary predicate for inferring deceptive intent") (internal quotation marks

10  omitted; emphasis added)); *see also SAP America, Inc. v. Purple Leaf, LLC*, No. C 11–4601 PJH,

11  2012 WL 2237995, at *4 (N.D. Cal. June 15, 2012).  Consequently, Dawgs's claims of fraud fail as

12  a matter of law.

### b.   Dawgs Fails To Plausibly Allege That Crocs Has Engaged In "Sham Litigation."

15  Throughout its Complaint, Dawgs repeatedly says Crocs knew its patents were invalid when

16  enforcing them, rendering its lawsuits a "sham" targeted at harming Dawgs's commercial

17  relationships.  *See, e.g.*, Compl. ¶¶1–2, 25–28, 34, 46, 50.  These conclusory allegations fail to

18  fulfill the second element of *Walker Process*, that Crocs "was aware of the fraud when bringing

19  suit."  *See Nobelpharma*, 141 F.3d at 1070.  For a lawsuit to be a "sham" and unprotected by the

20  *Noerr-Pennington* doctrine, Dawgs must allege and prove that (1) "the lawsuit [is] objectively

21  baseless in the sense that no reasonable litigant could realistically expect success on the merits," and

22  if this showing is made, Dawgs must then show (2) "the baseless lawsuit conceals an attempt to

23  interfere directly with the business relationships of a competitor through the use of the

24  governmental process—as opposed to the outcome of that process—as an anticompetitive weapon."

25  *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60–61 (1993)

26  (hereinafter, "*PRE*") (internal quotation marks, emphases, citations, and alterations omitted); *see*

27  *also Darba Enters., Inc. v. Amica Mut. Ins. Co.*, No. 2:12-cv-00043-LRH-GWF, 2012 WL

28  3096709, at *3 (D. Nev. July 30, 2012) ("Claims asserting that another party has instituted 'sham'

- 15 -

1   litigation must include specific allegations demonstrating that the *Noerr-Pennington* protections do

2   not apply."). The facts alleged by Dawgs satisfy neither element.

3         As to the first prong, Dawgs needs reminding that Crocs was fully vindicated by the ITC and

4   Federal Circuit findings that Crocs's patents were valid and infringed by Dawgs's affiliate. *See* Part

5   I(B), *supra*. This cannot have been a sham, as "[a] winning lawsuit is by definition a reasonable

6   effort at petitioning for redress and therefore not a sham." *See PRE*, 508 U.S. at 60 n.5; *see also*

7   *Seiko Epson Corp. v. Glory South Software Mfg., Inc.*, 684 F. Supp. 2d 1231, 1238 (D. Or. 2010)

8   (holding that defendant's "success in asserting its rights to related patents before the ITC and on

9   appeal to the Federal Circuit establishes as a matter of law that the litigation efforts it has

10  undertaken to protect its patent rights have been objectively reasonable"). On the heels of its early

11  victories, Crocs sued Dawgs for patent infringement in the Colorado Action on August 6, 2012.

12  Colo. Action Dkt. No. 104. At that time, the presumption that Crocs was enforcing its patents in

13  good faith (*see iLOR*, 631 F.3d at 1377), is *bolstered* by the ITC's and Federal Circuit's respective

14  holdings. Dawgs alleges *no facts* that rebut the presumption Crocs acted in good faith, and

15  therefore fails to show, as it must, that when Crocs filed suit, "no reasonable litigant [in its position]

16  could realistically expect to secure favorable relief." *See PRE*, 508 U.S. at 62.

17        Dawgs references a non-final office action by the PTO, entered *after* the Colorado Action

18  was stayed, which issued a preliminary finding that the '789 patent was invalid due to its design

19  having appeared on Crocs's website more than a year before the patent application was filed.

20  Compl. ¶31. Because Crocs "did not stop prosecuting its litigation" against Dawgs at that point,

21  Dawgs says the Colorado Action is "clearly a sham." *Id.* Not so. First, the PTO's action has no

22  bearing on the validity of the '858 patent, so Crocs's litigation, which included the '858 patent,

23  cannot be a sham for that reason alone. *See* Compl. ¶47. Second, the PTO's action as to the '789

24  patent is *non-final* and may yet be reversed. Indeed, as Dawgs well knows, but failed to tell this

25  Court, the ITC determined that Crocs's '789 patent was <u>not</u> invalidated by Crocs's sales when it

26  adjudicated this exact same dispute in Crocs's ITC matter. *In re Certain Foam Footwear*, 2008 WL

27  1855922, at *58–59. The fact that the PTO, several years later, issued an expressly <u>non-final</u> initial

28  determination that was different than the ITC ruling cannot show that Crocs acted in bad faith in its

prior litigation.  Only upon conclusion of PTO proceedings will it be proper to lift the stay in the Colorado Action and assess the merits of Crocs's claims going forward.  Even if the '789 patent is invalidated, this will not retroactively convert the Colorado Action into a sham suit.  *See PRE*, 508 U.S. at 65 (holding that an unsuccessful claim was not baseless where it "was arguably 'warranted by existing law' or at the very least was based on an objectively 'good faith argument for the extension, modification, or reversal of existing law'") (citing Fed. R. Civ. P. 11); *see also C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1369 (Fed. Cir. 1998) ("Neither the bringing of an unsuccessful suit to enforce patent rights, nor the effort to enforce a patent that falls to invalidity, subjects the suitor to antitrust liability.").  Whether Dawgs can make the stringent showing required by *PRE* turns on Crocs's good faith in bringing its infringement claims; if the PTO's decision ever even becomes relevant, that question can only be answered at a later date by the Colorado court. *See* Part II(A), *supra*.[6]

Dawgs also has not fulfilled the second prong of the "sham litigation" test because it has not plausibly alleged that Crocs brought suit in order to disrupt Dawgs's commercial relationships.  *See PRE*, 508 U.S. at 60–61 ("Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation . . . [in which] the court should focus on whether the baseless lawsuit conceals an attempt to interfere directly with the business relationships of a competitor.") (citation and emphasis omitted).  Dawgs's conclusory assertion that Crocs brought suit for such a purpose (Compl. ¶30), unadorned by specific factual allegations indicative of Crocs's state of mind, fails.  Dawgs does not allege, for instance, that Crocs "was indifferent to the outcome on the merits" of its suit, that "damages for infringement would be too low to justify [Crocs's] investment in the suit," or that Crocs "decided to sue primarily for the benefit of collateral injuries inflicted through the use of legal process." *See PRE*, 508 U.S. at 65.  Dawgs's bare allegations of "sham litigation"

---

[6] *See also C.R. Bard*, 157 F.3d at 1365 ("Deceptive intent is not inferred simply because information was in existence that was not presented to the examiner . . . ."); *N. Telecom v. Datapoint Corp.*, 908 F.2d 931, 939 (Fed. Cir. 1990) ("Given the ease with which a relatively routine act of patent prosecution can be portrayed as intended to mislead or deceive, clear and convincing evidence of conduct sufficient to support an inference of culpable intent is required.").

1    are entirely devoid of factual support and completely implausible, especially given the ITC and

2    Federal Circuit's findings that Dawgs's shoes infringe both the '789 and '858 patents.

3
                        **c.    Dawgs Fails To Allege Specific Intent To Deceive The PTO And**
4                              **Fails To Allege Materiality.**

5         Dawgs fails to adequately allege the third or fourth elements of a *Walker Process* claim,

6    under which it must allege facts showing "clear evidence of deceptive intent together with a clear

7    showing of reliance, *i.e.*, that the patent would not have issued but for the misrepresentation or

8    omission." *See Nobelpharma*, 141 F.3d at 1071.  As discussed in Part II(B)(1)(a), *supra*, Dawgs

9    has alleged no facts suggesting that Crocs *specifically* intended to defraud the PTO with

10   misstatements and omissions.  *See Nobelpharma*, 141 F.3d at 1071 ("[F]or an omission such as a

11   failure to cite a piece of prior art to support a finding of *Walker Process* fraud, the withholding of

12   the reference must show evidence of fraudulent intent.  A mere failure to cite a reference to the PTO

13   will not suffice.").  Dawgs's general averment that Crocs intended to make these statements, and

14   that the statements were false, falls short.

15        Dawgs also has not plausibly alleged materiality, *i.e.* that but for Crocs's misrepresentations,

16   the patents would not have issued.  The allegedly invalidating Aqua Clog and Waldies references

17   are cited on the face of both the '858 and the '789 patents, showing that the Examiner did not deem

18   them invalidating art.  Berta Decl. Ex. A at 1; *id.* Ex. B at 1.  "When an applicant fails to disclose

19   prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had

20   it been aware of the undisclosed prior art." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d

21   1276, 1291 (Fed. Cir. 2011) (en banc).  Conversely, where the PTO was aware of the art, its

22   omission <u>cannot</u> have been a but-for cause of the patent's issuance.  *See Molins PLC v. Textron,*

23   *Inc.*, 48 F.3d 1172, 1885 (Fed. Cir. 1995).

24        Moreover, even crediting Dawgs's wildly implausible claims that the PTO never considered

25   the Aqua Clog, even though it is clearly on the face of both patents, it simply does not matter.  The

26   Federal Circuit took on the issue of whether the Aqua Clog was invalidating prior art with respect to

27   the '858 patent and determined it was not.  *Crocs*, 598 F.3d at 1308–11.  Similarly, the ITC ALJ

28   rejected the notion that the Aqua Clog was invalidating prior art to the '789 patent—a finding that

1    Dawgs's sister company never challenged on appeal. *See id.* at 1302 (noting that only Crocs

2    appealed the ITC's final determination).  Because the Aqua Clog has already been rejected as

3    invalidating prior art with respect to both patents, it cannot be material under *Therasense*, making

4    Dawgs's inequitable conduct claims not just implausible, but impossible.

5         Further, the ITC has comprehensively rejected the premise that any misrepresentations or

6    omissions regarding the inventorship of Crocs's shoe amount to inequitable conduct.  ALJ

7    Enforceability Determination, 2011 WL 1208941, at *8, *14–15.  Dawgs is not entitled to yet

8    another bite at the fraud apple by trotting out the same allegations here.

9         Because Dawgs fails to state plausible antitrust claims in light of the requirements of *Walker*

10   *Process*, its claims should be dismissed pursuant to the *Noerr-Pennington* doctrine.

11                    **2.    Dawgs Fails To State Claims Under Nevada Law.**

12        Dawgs's two state law claims are preempted and barred by federal law.  "[F]ederal patent

13   law bars the imposition of liability for conduct before the PTO unless the plaintiff can show that the

14   patentholder's conduct amounted to fraud or rendered the patent application process a sham."

15   *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1336 (Fed. Cir. 1998), *overruled on*

16   *other ground by Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir.1999).

17   Dawgs's state law claims rest on the same factual predicate as its federal claims—false statements

18   concerning inventorship and prior art.  *See* Compl. ¶¶90, 98 (Dawgs's state law claims arise "from a

19   common nucleus of operative facts as alleged in the first three federal claims").  Because Dawgs has

20   not plausibly alleged fraud on the PTO, *see* Part I(B)(1)(a), *supra*, its two state law tort claims

21   arising from these allegations should be dismissed as preempted.  *See Hunter Douglas*, 153 F.3d at

22   1336 ("[I]f the plaintiff were to fail to allege that the defendant patent holder was guilty of

23   fraudulent conduct before the PTO or bad faith in the publication of a patent, then the complaint

24   would be dismissed for failure to state a claim upon which relief can be granted because of federal

25   preemption."); *see also Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 347 (2001)

26   ("Policing fraud against federal agencies is hardly a field which the States have traditionally

27   occupied, such as to warrant a presumption against finding federal pre-emption of a state-law cause

28   of action.") (citation and internal quotation marks omitted); *Abbott Labs. v. Brennan*, 952 F.2d

1346, 1357 (Fed. Cir. 1991) ("[T]he federal administrative process of examining and issuing

patents . . . is not subject to collateral review . . . .").

a.   **Dawgs's Claim For Interference With Economic Advantage Is Preempted By Federal Law.**

In its fourth cause of action, Dawgs alleges that Crocs "has engaged in intentional and

wrongful conduct designed or calculated to disrupt and interfere with" Dawgs's prospective and

actual relationships. Compl. ¶92. Dawgs's Complaint recites only two specific facts arguably in

support of this claim: that Crocs sued or threatened to sue retailers such as CVS for selling Dawgs's

products, causing Dawgs to lose business (*id.* ¶¶30, 78); and that by making "misleading and

impermissible assertions of patent rights" Crocs caused Dawgs to be perceived as a counterfeiter

(*id.* ¶36). It is apparent that Dawgs is once again seeking to impose liability on Crocs for bringing

suit, and informing the marketplace that it owns the '858 and '789 patents and intends to assert its

rights, all of which is protected petitioning conduct. "Patents would be of little value if infringers of

them could not be notified of the consequences of infringement or proceeded against in the courts."

*Virtue v. Creamery Package Mfg. Co.*, 227 U.S. 8, 37–38 (1913). And indeed, a patentholder has a

right to inform potential infringers—to "give notice to the public"—of its patent rights. 35 U.S.C.

§ 287; *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1353 (Fed. Cir. 1999) (holding that a

patentee's protected right to petition "includes threatening alleged infringers with suit").[7]

For this reason, Dawgs's fourth claim runs head-first into both the *Noerr-Pennington*

doctrine and the bar on state tort claims relating to the assertion of patent rights. *See Hunter*

*Douglas*, 153 F.3d at 1336 ("[F]ederal patent law bars the imposition of liability for publicizing a

patent in the marketplace unless the plaintiff can show that the patentholder acted in bad faith.")

(citing *Va. Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 869 (Fed. Cir. 1997)). Dawgs cannot

plausibly allege that Crocs acted in "bad faith" because it cannot show "that the claims asserted

were objectively baseless." *See GP Indus., Inc. v. Eran Indus., Inc.*, 500 F.3d 1369, 1374 (Fed. Cir.

2007) (citing *Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*, 362 F.3d 1365, 1375 (Fed.

---

[7] The Ninth Circuit also deems such pre-suit communications protected conduct. *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 939 (9th Cir. 2006).

1    Cir. 2004)).  *Globetrotter Software* instructs court to apply the "objective reasonableness" test from

2    *PRE*—which Dawgs cannot meet.  *See* 362 F.3d at 1376; *cf.* Part I(B)(1)(b), *supra.*

3

4              **b.**     **Dawgs's Unfair Trade Practices Claim Is Preempted And Barred By The *Noerr-Pennington* Doctrine.**

5            Lastly, Dawgs's fifth claim alleges that the acts that violate federal antitrust laws also violate

6    the Nevada Unfair Trade Practices Act (Nev. Rev. Stat. ch. 598A).  Compl. ¶¶98–99.  As with

7    Dawgs's fourth claim, this claim is preempted by federal patent law due to Dawgs's failure to allege

8    any facts sufficient to plausibly support its assertions of fraud or bad faith.  Moreover, because

9    Crocs is entitled to *Noerr-Pennington* immunity from federal antitrust claims, Dawgs's Unfair

10   Trade Practices claim is barred by the same doctrine.  *See* Nev. Rev. Stat. § 598A.050 ("The

11   provisions of this chapter shall be construed in harmony with prevailing judicial interpretations of

12   the federal antitrust statutes."); *Boulware v. State of Nev., Dept. of Human Resources*, 960 F.2d 793,

13   800–01 (9th Cir. 1992) (holding that where federal antitrust claims were subject to *Noerr-*

14   *Pennington* immunity, Nevada Unfair Trade Practices claim was barred as well).

15   **CONCLUSION**

16           Dawgs's entire Complaint is duplicative of claims that Dawgs filed as compulsory

17   counterclaims to Crocs's patent infringement action in the District of Colorado.  Because that case

18   was filed first, and has been stayed, Crocs respectfully requests that the Court dismiss Dawgs's

19   complaint without leave to amend.  In the alternative, the Court should dismiss each of Dawgs's

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

claims for failure to state a claim upon which relief can be granted and due to *Noerr-Pennington* immunity.

Dated:  October 3, 2014

Respectfully.

JOLLEY URGA WOODBURY & LITTLE

By: _____
WILLIAM R. URGA, ESQ. #1195
3800 Howard Hughes Pkwy., 16th Floor
Las Vegas, NV  89169
Telephone:  (702) 699-7500
Facsimile:  (702) 699-7555
Email:  FedCt@juww.com
         wru@juww.com

and

MICHAEL A. BERTA **
SEAN M. CALLAGY**
ARNOLD & PORTER LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA  94111-4024
Telephone:  (415) 471-3100
Facsimile:  (415) 471-3400
Email:  michael.berta@aporter.com
         sean.callagy@aporter.com

LAUREN S. MIYAMOTO **
ARNOLD & PORTER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA  90017-5844
Telephone:  (213) 243-4000
Facsimile:  (213) 241-4199
Email:  lauren.miyamoto@aporter.com

Attorneys for Defendants
         CROCS, INC., a Delaware corporation

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that I am an employee of

Jolley Urga Woodbury & Little and that on this 3rd day of October, 2014, I caused the document

entitled **DEFENDANT CROCS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS**

**COMPLAINT AS DUPLICATIVE OR FOR FAILURE TO STATE A CLAIM**

1   **(FED. R. CIV. P. 12(b)(6) & 9(b))** to be served on the parties in this action via the Court's

2   CM/ECF System.

3

4

                                        By: _____

5                                           An Employee of JOLLEY URGA

6                                               WOODBURY & LITTLE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEF.'S MOT. TO DISMISS COMPLAINT AS DUPLICATIVE OR UNDER FRCP 12(b)(6) & 9(b)