JOLLEY URGA WOODBURY & LITTLE
WILLIAM R. URGA, ESQ. (Nev. Bar No. 1195)
Email:  FedCt@juww.com
            wru@juww.com
3800 Howard Hughes Parkway, 16th Floor
Las Vegas, NV 89169
Telephone:      702.699.7500
Facsimile:      702.699.7555

ARNOLD & PORTER LLP
MICHAEL A. BERTA, ESQ. **
Email:  michael.berta@aporter.com
SEAN M. CALLAGY, ESQ. **
Email:  sean.callagy@aporter.com
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone:      415.471.3100
Facsimile:      415.471.3400

ARNOLD & PORTER LLP
LAUREN S. MIYAMOTO, ESQ. **
Email:  lauren.miyamoto@aporter.com
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Telephone:      213.243.4000
Facsimile:      213.243.4199
** (Pro Hac Vice Forthcoming)

Attorneys for Defendant
CROCS, INC. a Delaware corporation

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| U.S.A. DAWGS, INC., a Nevada corporation,<br><br>                    Plaintiff,<br><br>          v.<br><br>CROCS, INC., a Delaware corporation; and<br>DOES 1-10,<br><br>                    Defendants. | Case No.: 2:14-cv-1461-RFB-PAL<br><br>**DEFENDANT CROCS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS COMPLAINT AS DUPLICATIVE OR FOR FAILURE TO STATE A CLAIM (FED. R. CIV. P. 12(b)(6) & 9(b))** |

# TABLE OF CONTENTS

**Page**

INTRODUCTION                                                                            1

I.      DAWGS'S COMPLAINT IS DUPLICATIVE AND SHOULD BE
        DISMISSED AS A VIOLATION OF THE RULE AGAINST CLAIM
        SPLITTING.                                                                      2

        A.      Dawgs Cannot Drop Its Counterclaims In The Colorado Action And
                Its Complaint Should Therefore Be Dismissed As Duplicative.             2

        B.      Crocs's Anti-SLAPP Motion Does Not Amount To Implied Consent
                To Claim Splitting                                                      6

        C.      Crocs Did Not Waive Its Right To Bring A Motion To Dismiss For
                Failure To State A Claim                                                7

        D.      The Existence Of Additional Parties And Claims In The Colorado
                Action Does Not Protect Dawgs's Complaint From Dismissal                8

II.     DAWGS'S COMPLAINT FAILS TO STATE A CLAIM UPON WHICH
        RELIEF CAN BE GRANTED                                                           10

        A.      The *Noerr-Pennington* And Sham Litigation Doctrines Bar Each of
                Dawgs's Three Antitrust Claims.                                         10

                1.      Dawgs Has Not Plausibly Alleged Fraud Under *Walker
                        Process* Or *Handgards*.                                        11

                2.      Dawgs Fails To State A Claim For Sham Litigation.               15

                3.      Crocs Sought Dismissal Of All of Dawgs's Antitrust Claims.      17

        B.      Crocs's State-Law Claims Are Preempted And Fail To State A Claim.       18

CONCLUSION                                                                              18

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*3M Co. v. Boulter*,
842 F. Supp. 2d 85 (D.D.C. 2012) .......... 7

*Adams v. Cal. Dep't of Health Servs.*,
487 F.3d 684 (9th Cir. 2006) .......... 8

*Adams v. Trimble*,
CIV S-11-01360-KJM, 2012 WL 260160 (E.D. Cal. Jan. 27, 2012) .......... 8

*Am. Packaging Corp. v. Golden Valley Microwave Foods, Inc.*,
No. 94-1839, 1995 WL 262522 (E.D. Pa. May 1, 1995) .......... 4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 10, 17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 5, 16

*C.R. Bard, Inc. v. M3 Sys., Inc.*,
157 F.3d 1340 (Fed. Cir. 1998) .......... 10, 12, 14

*Calderon Rosado v. Gen. Elec. Circuit Breakers, Inc.*,
805 F.2d 1085 (1st Cir. 1986) .......... 6

*Calvert v. Alessi & Koenig, LLC*,
No. 2:11-CV-00333-LRH, 2013 WL 3833053 (D. Nev. July 22, 2013) .......... 2, 3, 9

*Clements v. Airport Authority of Washoe Cnty.*,
69 F. 3d 321 (9th Cir. 1995) .......... 3

*Destiny Tool v. SGS Tools Co.*,
344 Fed. App'x 320 (9th Cir. 2009) .......... 3, 5

*Dodd v. Hood River County*,
59 F.3d 852 (9th Cir. 1995) .......... 6

*Douglas v. Wisconsin Alumni Research Fund*,
81 F. Supp. 167 (N.D. Ill. 1948) .......... 5

*Eon Labs. Inc. v. SmithKline Beecham Corp.*,
298 F. Supp. 2d 175 (D. Mass. 2003) .......... 4

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
575 F.3d 1312 (Fed. Cir. 2009) .......... 13, 14

*FDIC v. Hulsey*,
22 F.3d 1472 (10th Cir. 1994) .......... 4

REPLY ISO CROCS'S MOT. TO DISMISS COMPLAINT AS DUPLICATIVE OR UNDER FRCP 12(b)(6) & 9(b)

*Handgards, Inc. v. Ethicon, Inc.*,
   743 F.2d 1282 (9th Cir. 1984) ........................................................... 1, 11, 14, 15

*Hartsel Springs Ranch v. Bluegreen Corp.*,
   296 F.3d 982 (10th Cir. 2002) .................................................................... 8

*Hydranautics v. FilmTec Corp.*,
   70 F.3d 533 (9th Cir. 1995) ........................................................................ 5

*In re Ciprofloxacin Hydrochloride Antitrust Litig.*,
   363 F. Supp. 2d 514 (E.D.N.Y. 2005), *aff'd in part*, 604 F.3d 98 (2d Cir. 2010) ... 14

*Jarrow Formulas, Inc. v. Int'l Nutrition Co.*,
   175 F. Supp. 2d 296 (D. Conn. 2001) ......................................................... 17

*John v. Douglas Cnty. Sch. Dist.*,
   219 P.3d 1276 (Nev. 2009) .......................................................................... 7

*Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*,
   628 F.3d 1359 (Fed. Cir. 2010) ................................................................. 13

*Mercoid Corp. v. Mid-Continent Inv. Co.*,
   320 U.S. 661 (1944) .................................................................................... 5

*Milan v. Centennial Commc'ns Corp.*,
   500 F. Supp. 2d 6 (D.P.R. 2007) ................................................................. 7

*Owens v. Kaiser Found. Health Plan, Inc.*,
   244 F.3d 708 (9th Cir. 2001) ....................................................................... 8

*Pipeliners Local Union No. 798, Tulsa, Okla. v. Ellerd*,
   503 F. 2d 1193 (10th Cir. 1974) ................................................................. 3

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.* ("*PRE*"),
   508 U.S. 49 (1993) ............................................................................... 15, 16

*Rohm & Haas Co. v. Brotech Corp.*,
   770 F. Supp. 9285 (D. Del. 1991) ............................................................... 4

*Rosenthal v. Nevada*,
   514 F. Supp. 907 (D. Nev. 1981) .............................................................. 8, 9

*Saylor v. United States*,
   315 F.3d 664 (6th Cir. 2003) ....................................................................... 9

*Server Tech., Inc. v. Am. Power Conversion Corp.*,
   No. 3:06-cv-00698-LRH-VPC, 2014 WL 3894075 (D. Nev. Aug. 8, 2014) ....... 13

*Sheridan v. NGK Metals Corp.*,
   609 F.3d 239 (3d Cir. 2010) ....................................................................... 8

*Springs v. First Nat'l Bank of Cut Bank*,
   835 F. 2d 1293 (9th Cir. 1988) ................................................................... 3

REPLY ISO CROCS'S MOT. TO DISMISS COMPLAINT AS DUPLICATIVE OR UNDER FRCP 12(b)(6) & 9(b)

*Tank Insulation Int'l, Inc. v. Insultherm, Inc.*,
   104 F.3d 83 (5th Cir. 1997) ....................................................................... 5

*Trujillo v. City of Ontario*,
   269 Fed. App'x 683 (9th Cir. 2008) ........................................................... 6

*United States ex rel. Newsham v. Lockheed Missiles & Space Co.*,
   190 F.3d 963 (9th Cir. 1999) ...................................................................... 7

*United States v. Eastport Steamship Corp.*,
   255 F.2d 795 (2d Cir. 1958) ....................................................................... 5

*United States v. ITT Rayonier, Inc.*,
   627 F.2d 996 (9th Cir. 1980) ...................................................................... 8

*USM Corp. v. SPS Techs., Inc.*,
   102 F.R.D. 167 (N.D. Ill. 1984) ................................................................. 4

*Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*,
   382 U.S. 172 (1965) ........................................................................ 1, 11, 14

**Statutes and Rules**

35 U.S.C. § 102(b) ......................................................................................... 11

Fed. R. Civ. P.
   8 ................................................................................................................. 18
   9(b) ............................................................................................ 10, 14, 18
   12(b)(6) ....................................................................................... 7, 10, 16
   13(a) .............................................................................................. 3, 4

**Other Authorities**

*Restatement (Second) of Judgments* § 25 (1982) ......................................... 9

REPLY ISO CROCS'S MOT. TO DISMISS COMPLAINT AS DUPLICATIVE OR UNDER FRCP 12(b)(6) & 9(b)

### INTRODUCTION

Dawgs's Opposition fails to refute the two essential grounds on which Dawgs's Complaint should be dismissed—first, that Dawgs is attempting to obviate the stay it requested in Colorado to try its counterclaims first, without having to defend against Crocs's first-filed patent infringement action, and second, that Dawgs has not and cannot state a ground for relief under *Walker Process* or *Handgards* because there is no set of plausible facts showing that Crocs knew or should have known that its patents were invalid or unenforceable.

Regarding the first, Dawgs's Opposition makes the offer that it will dismiss its Colorado claims, if only this Court will allow them to proceed here. Dawgs's offer proves the point—any defendant would want to stay the case against them and only litigate their counterclaims, if they could prevail upon the first Court to stay the plaintiff's case and convince a different Court to take up the defendant's counterclaims. But, that is why there are rules against claim-splitting and rules regarding comity. As Dawgs implicitly acknowledges by its offer, the Colorado counterclaims are duplicative of the claims here. On this basis, they should be dismissed. More importantly, it is important to remember that the gravamen of Dawgs's claims is that Crocs's patents are supposedly invalid and unenforceable and Dawgs has not infringed Crocs's patents, and it is on this basis that Crocs has allegedly violated the antitrust laws. But, as set forth in Crocs's opening motion and not disputed by Dawgs, no Court or administrative body has ever actually held Crocs's patents invalid or unenforceable or that the shoes at issue do not infringe Crocs's patents. Indeed, all final determinations regarding Crocs's patents have held the opposite. Thus, in order to prevail here, Dawgs would first have to actually prove that Crocs's patents were invalid or unenforceable and that the Dawgs shoes do not infringe, thus requiring a mini-trial into infringement, validity and enforceability issues that are already at issue in the Colorado Action. Only in the unlikely event that Crocs's patents were successfully challenged would Dawgs be able to establish a supposed antitrust violation. Thus, Dawgs's claims here would require trying the entire Colorado Action first, confirming that Dawgs's claims are properly dismissible in favor of that action.

With regard to the merits of Dawgs's claims, the same set of facts establish that Dawgs cannot plead any facts sufficient to establish scienter. Setting aside all of the other problems with

1   the merits of Dawgs's claims, the fact remains that Dawgs-branded shoes have been found to

2   infringe patents that have been found to be both valid and enforceable, including over the "Aqua

3   Clog" art that is the centerpiece of Dawgs's claims.  Even assuming the unlikely scenario that

4   Dawgs will prevail one day in a fourth, fifth or hundredth attempt at invalidating Crocs's patents,

5   this does not and cannot show that Crocs has ever acted with any knowledge that its patents are

6   invalid or unenforceable.  Every tribunal to decide the issue has found otherwise.  Dawgs does not

7   and cannot plead any facts sufficient to plausibly claim that Crocs has a belief, contrary to every

8   litigation outcome, that its patents are actually invalid or unenforceable.  On this basis, Dawgs's

9   antitrust claims also fail to state a claim.

10      For these reasons, Dawgs's entire Complaint should be dismissed.

11  **I.    DAWGS'S COMPLAINT IS DUPLICATIVE AND SHOULD BE DISMISSED AS A
         VIOLATION OF THE RULE AGAINST CLAIM SPLITTING.**

12
13      **A.    Dawgs Cannot Drop Its Counterclaims In The Colorado Action And Its
              Complaint Should Therefore Be Dismissed As Duplicative.**

14      Unable to deny that this lawsuit overlaps with antitrust counterclaims it filed in the Colorado

15  Action, Dawgs offers to dismiss its "non-patent counterclaims" in the Colorado Action in favor of

16  allowing this latter-filed case to proceed.  This is an empty promise.  There are no "non-patent"

17  counterclaims in the Colorado Action: all claims asserted by Dawgs in that case relate to Crocs's

18  patent rights.  Dawgs makes the same assertions in that case that Crocs's conduct in obtaining and

19  enforcing its patents violated the antitrust laws and interfered with Dawgs's business relations.  In

20  addition, Dawgs's offer is utterly impractical.  The Colorado Action was stayed *at Dawgs's request*

21  while Crocs's motion to dismiss was still pending—and that motion raised the same questions of the

22  sufficiency of Dawgs's claims that this Court would need to resolve if this case proceeds.  Dawgs

23  cannot ask the Colorado court to take any action until the stay is lifted, and even if the stay were

24  lifted, Dawgs would have to respond to Crocs's pending motion before the case could proceed.  To

25  allow this second case to go forward, despite an earlier-filed case involving the same nucleus of

26  facts remaining on file, and despite a challenge to the sufficiency of those claims still pending,

27  would waste everyone's time, violate comity, and disregard the letter and spirit of the bar against

28  claim-splitting.  *See Calvert v. Alessi & Koenig, LLC*, No. 2:11-CV-00333-LRH, 2013 WL

3833053, at *1 (D. Nev. July 22, 2013) ("The doctrinal bar against claim splitting prevents 'a defendant from being harassed by repetitive actions based on the same claim.'") (quoting *Clements v. Airport Authority of Washoe Cnty.*, 69 F. 3d 321, 328 (9th Cir. 1995)) .

Even if Dawgs had dismissed its counterclaims in Colorado before filing here, this case could not proceed for the independent reason that Dawgs's antitrust and tort claims are compulsory counterclaims to Crocs's infringement claims, and therefore must be raised and tried in the Colorado Action or not at all. *See* Fed. R. Civ. P. 13(a). The governing law in the forum of the first-filed case controls, here, the Tenth Circuit. *See Springs v. First Nat'l Bank of Cut Bank*, 835 F. 2d 1293, 1295 (9th Cir. 1988) (holding that whether a claim is a compulsory counterclaim that should have been raised in an earlier state action is a question o state law); *see also Destiny Tool v. SGS Tools Co.*, 344 Fed. App'x 320, 323 (9th Cir. 2009) (unpublished) ("The original patent infringement litigation occurred in the Sixth Circuit, and thus Sixth Circuit law more logically applies [to whether claims are compulsory counterclaims].").  The Tenth Circuit gives "the terms 'transaction' and 'occurrence' contained in Rule 13(a) . . . flexible and realistic constructions in order to effect 'judicial economy', i.e., trial in one action of all related controversies between the parties and, of course, the avoidance of multiplicity of suits." *Pipeliners Local Union No. 798, Tulsa, Okla. v. Ellerd*, 503 F. 2d 1193, 1198 (10th Cir. 1974) (citations omitted); *see also id.* at 1199 ("[I]n deciding what is a 'transaction' or 'occurrence' [for Rule 13(a)], the terms must be accorded liberal construction.").

Dawgs's Colorado counterclaims rely on overlapping facts and evidence that are central to Crocs's patent infringement suit, namely whether Crocs's patents were validly obtained and remain valid in light of alleged prior art, whether Crocs acted in good faith in enforcing the patents, and whether Crocs had a reasonable basis for believing that Dawgs infringes the patents.  The relationship between the claims is unmistakable, and trial of Dawgs's counterclaims—assuming the Colorado Court finds them legally sufficient—in the same proceeding as Crocs's patent infringement claims will address all salient issues under one roof.  A parallel trial on virtually all of the same issues, in a different court and in a different state, will squander resources by requiring presentation of the same evidence and a decision on the same issues—with the potential for contrary

outcomes. Dawgs's counterclaims are therefore compulsory under the Tenth Circuit's "liberal construction" of Rule 13(a) and must be tried there. *See FDIC v. Hulsey*, 22 F.3d 1472, 1487 (10th Cir. 1994) (finding counterclaim was compulsory because the evidence necessary to support or refute the counterclaims overlapped and there was a "logical relation" between the principal claim and the counterclaim related to the same loan agreement).

Even if the Tenth Circuit has not previously spoken to this precise issue, "the majority of courts, when faced with this issue, have held that antitrust claims are compulsory counterclaims under Rule 13(a) if the antitrust claim arises out of the same transaction or occurrence as the original claim." *USM Corp. v. SPS Techs., Inc.*, 102 F.R.D. 167, 170-71 (N.D. Ill. 1984) (citing cases and finding that antitrust claim based on fraudulent procurement was compulsory counterclaim in patent infringement suit); *see also Eon Labs. Inc. v. SmithKline Beecham Corp.*, 298 F. Supp. 2d 175, 181-82 (D. Mass. 2003) (plaintiff's federal antitrust claims alleging enforcement of invalid patent were barred by compulsory counterclaim rule because plaintiff had failed to assert claims during a patent infringement action); *Am. Packaging Corp. v. Golden Valley Microwave Foods, Inc.*, No. 94-1839, 1995 WL 262522, at *4 (E.D. Pa. May 1, 1995) ("Walker Process claims are compulsory counterclaims to patent infringement suits, because the Walker Process claims are based on allegations of fraud before the Patent Office, which is an issue often raised during patent infringement suits."); *Rohm & Haas Co. v. Brotech Corp.*, 770 F. Supp. 928, 935 (D. Del. 1991) (antitrust, RICO and common law fraud claims were compulsory counterclaims to prior patent infringement suit because all had in common the fraudulent procurement of the patent).

Ignoring the reason for the bar against claim-splitting and the overwhelming weight of authority, Dawgs says uncertainty over a "circuit split" justifies application of Ninth Circuit law, which allegedly would allow its claims to persist in this forum had Crocs originally filed its infringement suit here. Pl.'s Opp. to Mot. to Dismiss (EFC No. 16) at 7 ("Opp."). That hypothetical question is not relevant because Crocs elected (as was its right) to file suit in Colorado, and Dawgs elected to heed the view of the majority of courts and file its counterclaims in the same action. Dawgs cannot dismiss those counterclaims in Colorado and continue its suit here without

violating Rule 13(a).  Even if antitrust counterclaims did qualify as permissive in the Ninth Circuit

(a point Crocs does not concede), if such claims were compulsory in the forum where a prior action

was filed, they must be dismissed in any latter-filed action, regardless of the law of the second

forum.  *See Destiny Tool*, 344 Fed. App'x at 323-24 (unpublished) (holding that antitrust claims in a

latter-filed action should have been dismissed because the claims were compulsory counterclaims to

a first-filed patent infringement action in the Northern District of Ohio).  The cases Dawgs cites in

opposition are inapposite and have been heavily criticized and their holdings limited to the facts

raised.[1]  And even if Dawgs's patent-based antitrust and tort counterclaims were permissive, Dawgs

had a choice to raise them in the Colorado Action or take its chances and file them elsewhere.

Having elected to assert the same claims in Colorado, Dawgs should be held to its decision and not

be allowed to raise overlapping claims against the same party based on the same nucleus of facts.

Last, Dawgs says the fact it obtained a stay in the Colorado Action over Crocs's objection

should not weigh in favor of dismissal.  Opp. at 8.  Dawgs claims, without apparent irony, that this

duplicative case should proceed because Dawgs is a small business that is being "crushed by Crocs'

litigation" and that it sought a stay of the Colorado Action to avoid "wast[ing] tremendous resources

litigating a complex case" pending *inter partes* reexamination.  *Id.*  Dawgs, not Crocs, proliferated

litigation by instituting this duplicative action, which portends to raise complex and resource-

intensive issues of patent and antitrust law if allowed to proceed.[2]  Any harm that may accrue to

---

[1] Dawgs cites *Mercoid Corp. v. Mid-Continent Investment Co.*, 320 U.S. 661 (1944), and two cases following it, *Hydranautics v. FilmTec Corp.*, 70 F.3d 533, 536 (9th Cir. 1995) and *Tank Insulation International, Inc. v. Insultherm, Inc.*, 104 F.3d 83, 88 (5th Cir. 1997).  *Mercoid* has been heavily criticized by federal courts.  *See Douglas v. Wisconsin Alumni Research Fund*, 81 F. Supp. 167, 170 (N.D. Ill. 1948) (noting that "consideration of the nature of a compulsory counterclaim would appear to indicate certain inherent weaknesses in the rationale of the *Mercoid* decision"); *United States v. Eastport Steamship Corp.*, 255 F.2d 795, 805 (2d Cir. 1958) ("[I]n view of the criticism which the [*Mercoid*] decision has received and the failure of the Court to discuss the principles upon which the decision rests, we think that *Mercoid* cannot be taken as precedent for other than its own limited facts.") (footnote omitted).  Dawgs cites no authority suggesting courts in the Tenth Circuit would apply *Mercoid* to the antitrust counterclaims at stake here.

[2] The Supreme Court's recognition that antitrust cases with minimal merit pose especially high burdens on the courts and litigants motivated in part its articulation of the requirement that an entitlement to relief be "plausible" and not merely possible.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557-59 (2007).  As discussed in Part II, *infra*, Dawgs has not made that threshold showing.

1    Dawgs during the pendency of reexamination (*see id.*), is the result of Dawgs's own strategic

2    decision to seek the stay.  Dawgs cannot now claim prejudice based on the consequences of its own

3    actions.

4
         **B.     Crocs's Anti-SLAPP Motion Does Not Amount To Implied Consent To Claim
5                  Splitting.**

6        Within a week of Dawgs filing this lawsuit, Crocs asked the Court to dismiss Dawgs's two

7    state-law claims as contrary to public policy under the Nevada anti-SLAPP law.  Def.'s Special

8    Mot. to Dismiss (ECF No. 5) ("Special Mot.").  Two weeks later, Crocs timely filed the present

9    Motion to dismiss the entire Complaint.  Def.'s Mot. to Dismiss (ECF No. 13) ("Mot. To Dismiss").

10   Nothing in Crocs's conduct suggests assent to this action.  Yet Dawgs claims that Crocs forfeited its

11   right to seek dismissal by identifying *multiple*, independently viable reasons that this suit is

12   improper.  Opp. at 8-9.  No court has endorsed Dawgs's hyper-technical theory of waiver, and

13   courts finding implicit consent to claim splitting have required substantial evidence of consent.  For

14   example, in *Trujillo v. City of Ontario*, 269 Fed. App'x 683, 684 (9th Cir. 2008) (unpublished), one

15   of only two cases cited by Dawgs, the plaintiff's attorney had agreed with an email request to split

16   the claims.  Similarly, in *Dodd v. Hood River County*, 59 F.3d 852, 862 (9th Cir. 1995), the other

17   case cited by Dawgs, the plaintiffs had specifically reserved their rights to raise their claims in

18   another court.  In addition, the defendants had agreed with plaintiffs to stay the duplicative action,

19   rather than moving to dismiss, and let the original action be decided on the merits before seeking

20   dismissal of the duplicative case.  *Id.* at 857; *see also Calderon Rosado v. Gen. Elec. Circuit*

21   *Breakers, Inc.*, 805 F.2d 1085, 1086 (1st Cir. 1986) (finding consent to claim splitting where

22   defendant did not object at any point in either case to proceeding with duplicative case).

23       In contrast, Dawgs never expressed its intent to proceed with overlapping claims in separate

24   courts or requested Crocs's assent do so.  Crocs certainly never agreed to the filing of this action in

25   spite of the pending Colorado Action.  To the contrary, Crocs immediately sought dismissal, noting

26   the abusive and duplicative nature of Dawgs's claims in its anti-SLAPP motion.  Special Mot. at 4.

27   Shortly after filing its anti-SLAPP motion, Crocs timely filed this motion to dismiss, which directly

28   raised the claim-splitting issue.  *See* Mot. to Dismiss.  While the Nevada anti-SLAPP statute treats

dismissal of an abusive claim as an adjudication on the merits (*see John v. Douglas Cnty. Sch. Dist.*, 219 P.3d 1276, 1284 (Nev. 2009)), this bar against re-filing meritless claims does not transform the act of filing a motion under the statute into implicit consent to proceed for all other purposes. Dawgs cites no case finding a waiver of claim-splitting on such a "gotcha" ground, and doing so would be inimical to a jurisprudential doctrine that streamlines litigation and protects parties against duplicative suits. *See Milan v. Centennial Commc'ns Corp.*, 500 F. Supp. 2d 6, 13-14 (D.P.R. 2007) (no consent to claim splitting even though defendants asked the court to continue with the duplicate case so it could rule on defendant's four motions to dismiss because three of those motions were requests to dismiss based on res judicata).

### C. Crocs Did Not Waive Its Right To Bring A Motion To Dismiss For Failure To State A Claim.

Further, Crocs did not waive its right to bring a Rule 12(b)(6) motion by first filing a special motion to dismiss under the Nevada anti-SLAPP statute. Dawgs overlooks clear Ninth Circuit authority refuting its position. If an anti-SLAPP motion is unsuccessful, "the litigant remains free to bring a Rule 12 motion to dismiss, or a Rule 56 motion for summary judgment." *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 972 (9th Cir. 1999). The court in *Lockheed* held that although anti-SLAPP statutes and the Federal Rules do share some similar purposes, there was "no 'direct collision,'" meaning both motions can be brought. *Id.*

Overlooking binding precedent, Dawgs relies on *3M Co. v. Boulter*, 842 F. Supp. 2d 85 (D.D.C. 2012), a distinguishable case from a district court in a different circuit. Opp. at 9. At issue in *3M* was whether a motion to dismiss under the District of Columbia anti-SLAPP statute could be brought in federal court at all. *3M Co.*, 842 F. Supp. 2d at 111. That issue has long since been clearly decided in the Ninth Circuit, a point Dawgs does not contest. *See Lockheed*, 190 F.3d at 972 (finding that California's anti-SLAPP statute applied in federal court because anti-SLAPP motions did not collide with Rules 12 and 56). The *3M* decision expressly rejected the reasoning of *Lockheed*; it therefore has no application here. *3M*, 842 F. Supp. 2d at 108-09.

1

2

**D.    The Existence Of Additional Parties And Claims In The Colorado Action Does Not Protect Dawgs's Complaint From Dismissal.**

3        Dawgs also says the doctrine against claim-splitting should not apply because there are

4    *additional* parties and claims in the Colorado Action not involved here.  Opp. at 9-11.  This

5    misstates the test for claim splitting.  The process for determining whether a suit is duplicative

6    "borrow[s] from the test for claim preclusion."  *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684,

7    688 (9th Cir. 2006) (citing *Hartsel Springs Ranch v. Bluegreen Corp.*, 296 F.3d 982, 987 n.1 (10th

8    Cir. 2002)).  "Courts are no longer bound by rigid definitions of parties or privies for purposes of

9    applying collateral estoppel or res judicata."  *United States v. ITT Rayonier, Inc.*, 627 F.2d 996,

10   1003 (9th Cir. 1980).  A plaintiff's claims need not be completely identical; rather, "[t]he central

11   criterion in determining whether there is an identity of claims . . . is 'whether the two suits arise out

12   of the same transactional nucleus of facts."  *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d

13   708, 714 (9th Cir. 2001).  Of this there can be no doubt here.

14       Dawgs first argues that the parties are not the same because Dawgs is not the sole defendant

15   in the Colorado Action.  Opp. at 10.  This is irrelevant: the question is whether the parties in the

16   current action—Crocs and Dawgs—are also parties to the co-pending action.  They are.  *See*

17   *Rosenthal v. Nevada*, 514 F. Supp. 907, 912 (D. Nev. 1981) (holding that the existence of *additional*

18   parties who contributed to the same wrong did not destroy identity of the parties for res judicata

19   purposes); *Adams v. Trimble*, CIV S-11-01360-KJM, 2012 WL 260160, at *9 (E.D. Cal. Jan. 27,

20   2012) (holding that under California's res judicata principles, that more defendants were added to

21   certain causes of action "does not change the fact that plaintiff as the party against whom claim

22   preclusion is being asserted has remained the same at all stages of the litigation"); *Sheridan v. NGK*

23   *Metals Corp.*, 609 F.3d 239, 261 (3d Cir. 2010) (holding the "same parties" requirement of claim

24   preclusion was satisfied in second action even though there were additional parties).

25       Dawgs also notes that it raised additional claims in the Colorado Action.  Opp. at 10.  This

26   too is irrelevant.  What matters is whether this case overlaps with claims already raised in the co-

27   pending action.  Claims that arise out of the same set of facts are precluded, even where a party

28   pleads different theories of recovery or new remedies.  *See Rosenthal*, 514 F. Supp. at 912 ("The

1    fact that a different or additional form of relief is requested in the second action does not preclude

2    the application of res judicata."); *see also Restatement (Second) of Judgments* § 25 (1982) ("A

3    claim is extinguished by a first judgment even though the plaintiff is prepared in the second action

4    to present theories not presented in the first action.").  In offering to dismiss its Colorado

5    counterclaims in favor of allowing this action to go forward, Dawgs admits that its current claims

6    arise out of the same transactional nucleus of facts.  *See* Opp. at 9.

7         Dawgs intimates that there are new facts that Dawgs did not plead in the Colorado Action,

8    making its current claims distinct.  *Id.* at 10.  As an initial matter, certain of the "new" facts—that

9    Crocs "demand[ed] that retailers not carry *any* of Dawgs's products, including . . . golf shoes,

10   winter boots, and safety boots" (*see* Opp. at 10-11)—are not stated in Dawgs's complaint and

11   therefore may not be considered.[3]  Dawgs also newly asserts that Crocs filed suit against CVS for

12   anti-competitive reasons, but states no facts bearing on Crocs's state of mind.  *See* Opp. at 5;

13   Compl. ¶ 30.  These "new" facts are not before the Colorado court as a result of Dawgs's decision

14   to plead its counterclaims in bare-bones fashion and then seek an immediate stay of that action after

15   Crocs moved to dismiss.  Dawgs cannot now claim that it was prevented from stating additional

16   facts as a result of its own actions.  Moreover, merely offering to provide new evidence does not

17   establish a new claim and avoid claim splitting, even if the evidence could not have been presented

18   in a prior case.  *See Rosenthal*, 514 F. Supp. at 912 ("[T]he pleading of additional facts to show an

19   aggravation of the alleged harm in the second suit does not alter the existence of the same facts

20   essential to the two suits."); *Saylor v. United States*, 315 F.3d 664, 668 (6th Cir. 2003) ("The fact

21   that appellants' new evidence might change the outcome of the case does not affect application of

22   claim preclusion doctrine.").

23        Finally, Dawgs says the equities weigh against dismissing its claims because dismissal

24   would not protect the defendant—which is Crocs, not Dawgs—from "being harassed by repetitive

25   actions based on the same claim."  Opp. at 11 (quoting *Calvert*, 2013 WL 3833053, at *1).  Dawgs

26

27   [3] The sole allegation relating to this conduct from Dawgs's Complaint is the vague allegation that
     retailers "informed [Dawgs] that the reason they would not carry DAWGS products is because of
28   agreements with CROCS."  Compl. ¶ 81.  Because it is more plausible that this conduct was proper
     (*see* p. 17, *infra*), it cannot be the basis for liability.

1  ignores the fact that it was Dawgs, not Crocs, who obtained a stay of the Colorado Action, delaying

2  adjudication of the merits.  Any claims of self-inflicted prejudice therefore ring hollow.

3
4  ## II.    DAWGS'S COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

5  While the claim-splitting doctrine requires dismissal of Dawgs's entire Complaint, if the

6  Court does proceed to examine the merits, the Court will find that Dawgs has failed to state a

7  plausible claim for relief on any of its five causes of action.  Dawgs asks the Court to ignore every

8  single prior determination ever made concerning Crocs's actions and the validity of its patents, and

9  accept as true unsupported conclusions of "fraudulent conduct" and "sham litigation" based on the

10  same "facts" that Dawgs and its affiliates have been hawking for years.  The law does not require

11  the Court to leave its common sense behind and indulge these implausible theories.  All claims

12  should be dismissed.

13
14  ### A.    The *Noerr-Pennington* and Sham Litigation Doctrines Bar Each Of Dawgs's Three Antitrust Claims.

15  All three of Dawgs's three claims under the federal antitrust laws (for monopolization and

16  attempted monopolization under Sherman Act § 2 and exclusionary conduct under Clayton Act § 3)

17  are barred by the *Noerr-Pennington* doctrine or the sham litigation doctrine.  Throughout its

18  Opposition, Dawgs ignores the rule that acts undertaken to acquire and enforce patents are

19  presumptively done in good faith.  *See C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1369 (Fed.

20  Cir. 1998) ("The law recognizes a presumption that the assertion of a duly granted patent is made in

21  good faith.").  Consequently, Dawgs must overcome a high pleading burden that requires it to state

22  "with particularity" facts that, if proven, would establish fraud on the PTO and courts.  *See* Fed. R.

23  Civ. P. 9(b).  Rather than do so, Dawgs repeats previously debunked theories and applies

24  conclusory labels such as "fraud" and "sham" without describing underlying facts.  The few facts

25  that Dawgs has alleged are more consistent with Crocs having acted in good faith, and because a

26  finding to the contrary requires unpermitted deductions of fact and unreasonable inferences,

27  Dawgs's claims fail the Rule 12(b) standard.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

28  ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops

short of the line between possibility and plausibility of entitlement to relief.") (internal quotation marks omitted).  When the Court examines the allegations through this lens, and disregards, as it must, the repetitive yet bare-bones legal conclusions that comprise the bulk of Dawgs's Complaint, it is apparent that Dawgs's claims must be dismissed.

### 1.    Dawgs Has Not Plausibly Alleged Fraud Under *Walker Process* Or *Handgards*.

Dawgs indicates in its Opposition that it seeks relief under multiple theories: that Crocs first committed fraud on the PTO in the course of obtaining its patents (a so-called *Walker Process* claim), and that Crocs acted in bad faith when naming Dawgs as a defendant in the Colorado Action in 2012 despite knowledge of its patents' infirmity (a so-called *Handgards* claim).  Opp. at 11. Dawgs has not alleged facts stating a plausible claim under either theory.

All allegations relating to Crocs's conduct in the PTO merely state that Crocs "failed to disclose" certain information and prior art materials when prosecuting its patents, and that Scott Seamans incorrectly held himself out as inventor of the '858 and '789 patents.  Opp. at 14; Compl. ¶ 47.  As an initial matter, each of the alleged "fraudulent statements and omissions" listed by Dawgs as support for its claims is defective as a matter of law.

For example, in its list of supposed supporting allegations, Dawgs first claims that "Crocs failed to disclose its own prior public use, marketing and sales of the shoe embodying the claims of the '858 patent and the '789 patent that came as early as July 2002 and continued to conceal this information until the patent examiner discovered it during reexamination."  Opp. at 14.  This allegation, were it true, proves nothing.  First, both the '789 and '858 patents claim priority to June 2003.  Berta Decl. (ECF No. 5-1) at 24 ('789 patent); *id* at 4 ('858 patent).  Under the relevant version of 35 U.S.C. § 102(b), any sales less than a year before to the priority date (*e.g.*, supposed July 2002 sales) are irrelevant for purposes of patentability.  Further, as Crocs pointed out in its opening Motion, the patent examiner in the reexamination of the '858 patent terminated the

1    reexamination and found the patent valid, making Dawgs's statement simply false.  Mot. to Dismiss

2    at 4-5.[4]

3           Similarly, Dawgs avers that Crocs "failed to disclose" an Italian prior art reference termed

4    BIHOS that supposedly invalidates Crocs's patents.  Dawgs's hopeful hyperbole regarding this

5    reference does not and cannot prove that Crocs's patents are invalid, and there certainly has been no

6    Court or other body that has ever found this art to be relevant to the patentability of Crocs's patents.

7    But again, this is entirely irrelevant, because Dawgs offers no facts of any sort even suggesting that

8    Crocs knew of and failed to disclose the BIHOS reference, much less any facts showing that Crocs

9    knew or had any belief that it was material to Crocs's patents.

10          The last six allegations that Dawgs cites as supposed support for its claims are all different

11   versions of the same allegation—the oft-repeated and never-validated claim that the Aqua Clog (*aka*

12   "Holey Soles," "Waldies" or the "Battiston" clog) was withheld from the Patent Office and would

13   invalidate Crocs's patents.[5]  As discussed in Crocs's opening motion, this assertion is contradicted

14   on the face of Crocs's patents, which show that the Waldies version of the Aqua Clog was, in fact,

15   disclosed to the Patent Office.  Mot. to Dismiss at 18.  And, Dawgs's claim of non-disclosure was

16   unequivocally rejected by the ITC when it considered this issue.  The fact that the ITC is not

17

18   [4] As also discussed in Crocs's opening motion, the Patent Office proceedings regarding the '789
     Patent have nothing to do with any supposed discovery of non-disclosed information.  The issue is
19   whether Crocs will ultimately be entitled to the June 2003 priority date based on certain alleged
     differences between the drawings in an earlier and later version of Crocs's applications.  Dawgs's
20   statements in this regard are not true, but they also do not and cannot change the fact that the Patent
     Office conclusively affirmed the validity of the '858 patent.

21   [5] The allegation that Crocs failed to disclose the identity of Ettore Battiston is a bizarre irrelevancy.
     Dawgs cannot show that the name "Ettore Battiston" has any legal significance to the patentability
22   of Crocs's shoes.  The only conceivable tie to Mr. Battiston is the allegation that he created the first
     version of the Aqua Clogs.  But, the identity of the creator of the Aqua Clogs is of no incremental
23   relevance to whether the Aqua Clogs were disclosed and are material to patentability.  The question
     of the disclosure of the Aqua Clog is the same allegation that Dawgs already lists (multiple times) in
24   its set of supporting supposedly fraudulent statements, making the "allegation" about Mr.
     Battiston's name a make-weight.  Similarly, the claim that Crocs "affirmatively misrepresented
25   Scott Seamans as the sole inventor of both the '858 and '789 patents" has no weight.  Dawgs sets
     forth no facts suggesting that any other person was involved in the conception of Crocs's patents.
26   But, this is a required element for inventorship.  *See C.R. Bard*, 157 F.3d at 1352 ("The 'inventor,'
     in patent law, is the person or persons who conceived the patented invention.").  Dawgs has not and
27   cannot allege any facts suggesting that Mr. Seamans is not the inventor of the patents, much less
     any facts suggesting that Crocs had a belief that he was not the inventor.  Thus, this item in the list
28   cannot support an antitrust claim.

binding on this Court is immaterial—what matters is that Dawgs has not and cannot credibly allege, in the face of this history, that Crocs has some belief or knowledge that its patents are invalid because of the Aqua Clog.  Dawgs's claims depend on this Court concluding that Crocs has an irrational secret belief, despite prevailing on this issue many times, that its patents truly are invalid. This is not true, and certainly Dawgs pleads no facts to support any plausible theory that this is true.

Putting aside Dawgs's "earth-is-flat" theories of invalidity, merely alleging that somebody said something to the PTO that later turned out to be incorrect, or did not identify a piece of prior art, is not fraud.  *See Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*, 628 F.3d 1359, 1379 (Fed. Cir. 2010) (finding failure to disclose based on "mistake or exercise of poor judgment . . . does not support an inference of intent to deceive" sufficient for fraud); *cf.* Opp. at 14 ("The case law confirms that a failure to disclose prior art references suffices to allege fraud on the USPTO."). A plaintiff cannot rely on legal conclusions, as Dawgs does, but instead must allege *facts* showing that the applicant made a *knowing* decision to conceal or misrepresent such information that it believed to be material.  *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328 (Fed. Cir. 2009).  Rather than allege facts that make this showing, Dawgs liberally peppers its Complaint with bare legal conclusions, *i.e.* that Crocs made "willful false statements" or "willfully failed to disclose" art to the PTO.  *See* Complt. ¶¶ 18-19.[6]  In suggesting that claims of this ilk can survive a motion to dismiss (Opp. at 14-15), Dawgs misstates the law.

All acts constituting "failure to disclose" were examined by the ITC and Federal Circuit and held not to invalidate Crocs's patents.  Dawgs acknowledges that these findings were made adversely to its current position, and says the prior rulings only examined particular combinations of

---

[6] Dawgs again offers variations on the theme that sales of Aqua Clog shoes, the same footwear examined by the ITC in rejecting claims of inequitable conduct, render Crocs's patents invalid. Opp. at 3, 4.  Dawgs alleges that Crocs should have known of the existence of the Aqua Clogs design by Italian designer Ettore Battiston because "Foam Creations offered Crocs the right to distribute the Aqua Clog with a heel strap." *Id.* at 4 (citing Compl. ¶¶ 17–18).  Even if taken as true that Crocs was generally aware of the Aqua Clog design, this allegation does not establish Crocs's belief that the design was invalidating art or a conscious decision by Crocs to conceal it from the patent examiner.  *See Server Tech., Inc. v. Am. Power Conversion Corp.*, No. 3:06-cv-00698-LRH-VPC, 2014 WL 3894075, at *9 (D. Nev. Aug. 8, 2014) ("To prove that the patentee acted with the specific intent to deceive the PTO, a finding that the misrepresentation or omission amounts to gross negligence, or negligence under a 'should have known' standard, is insufficient.").

1    prior art, are not res judicata and did not involve the full universe of facts Dawgs alleges today.

2    Opp. at 15-18.  This mistakes Crocs's argument.  The point is this: the Federal Circuit's and ITC's

3    decisions demonstrate why Dawgs's theory of fraud based on a mere failure to disclose the Aqua

4    Clog or whatever other materials Dawgs may exhume—absent facts stated "with particularity" that

5    show Crocs acted with the scienter—is implausible.

6         Dawgs's contention based on the examiner's non-final rejection of the '789 patent in 2013

7    in the course of a still-pending *ex parte* reexamination likewise does not establish a *knowing*

8    decision by Crocs to conceal information from the PTO at any time from 2002 to present.  Opp. at

9    17.  Dawgs argues that this single finding retroactively transforms every action taken by Crocs to

10   obtain and enforce its patents into fraud.  *Id.*  Dawgs's argument is tantamount to a request for strict

11   liability under the antitrust laws whenever a party enforces a patent that is later found invalid.  This

12   is not the law.  *See C.R. Bard*, 157 F.3d at 1369 ("Neither the bringing of an unsuccessful suit to

13   enforce patent rights, nor the effort to enforce a patent that falls to invalidity, subjects the suitor to

14   antitrust liability."); *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 363 F. Supp. 2d 514, 530

15   (E.D.N.Y. 2005) ("[E]xposing the parties . . . to treble antitrust damages simply because the patent

16   is later found to be invalid would overstep the bright-line rule adopted by the Supreme Court in

17   *Walker Process* . . . ."), *aff'd in part*, 604 F.3d 98 (2d Cir. 2010); *see also Walker Process Equip.,*

18   *Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 180 (1965) (Harlan, J., concurring) ("[T]his

19   private antitrust remedy should not be deemed available to reach § 2 monopolies carried on under a

20   nonfraudulently procured patent.").  To establish fraud, the onus remains on Dawgs not merely to

21   repeat a ground of invalidity, but also to demonstrate "with particularity" the "who, what, when,

22   where and how" that allegedly constitutes fraud.  *Exergen Corp.*, 575 F.3d at 1328.  Dawgs tries to

23   avoid its pleading burden by noting that state of mind "may be averred generally" under Rule 9(b),

24   but this ignores the very next clause in the same rule, which unambiguously requires that the

25   "circumstances constituting fraud" shall be stated "with particularity."  Fed. R. Civ. P. 9(b).

26   Consequently, Dawgs's allegations fail to state a claim under *Walker Process*.

27        Dawgs likewise does not allege facts, as required by *Handgards*, to show that Crocs covertly

28   believed that its patents were invalid, yet persisted in suing Dawgs in bad faith in 2012.  *See*

- 14 -

*Handgards, Inc. v. Ethicon, Inc.*, 743 F.2d 1282, 1290 (9th Cir. 1984) ("Handgards had to prove that the agents, officers, and directors of Ethicon responsible for prosecuting and maintaining the suit were in possession of facts that prevented them from holding a good faith belief that the Gerard patent was valid.").  Rather, when Crocs named Dawgs as a defendant in the Colorado Action, Crocs had just prevailed in establishing the validity of its patents and infringement by Dawgs's affiliate, making the presumption that Crocs acted in good faith all but conclusive.  Dawgs claims that, since that time, it has identified new materials bearing on the validity of Crocs's patents, *i.e.*, the BIHOS reference, which Dawgs found after its request for reexamination of the '858 patent was denied.  Opp. at 6, 14.  The Court will search Dawgs's Complaint in vain for *any* facts, must less facts stated with particularity, showing that this reference was known to Crocs at any time before Dawgs filed this lawsuit in September 2014.  Rather, as with Dawgs's allegations concerning other prior art materials, its Complaint merely alleges that Crocs "failed to disclose" the BIHOS reference during prosecution.  Compl. ¶ 47(c).  Dawgs's failure to state facts showing that Crocs believed that its patents were invalid, yet consciously chose to press ahead with suing Dawgs, is fatal to its claim.  *See Handgards*, 743 F.2d at 1290.[7]  Likewise, the PTO's non-final action concerning the '789 patents occurred in April 2013, more than six months *after* the Colorado Action against Dawgs had been stayed.  Dawgs says Crocs should nonetheless be strictly liable because it did not immediately cause the Colorado Action to be dismissed.  However, because Dawgs requested, and the court ordered, that the case be stayed until resolution of *ex parte* reexamination proceedings (which has not occurred), it would be premature for Crocs, Dawgs or any other party to seek to lift the stay or take action at this time.

### 2.        Dawgs Fails To State A Claim For Sham Litigation.

Because Dawgs fails to plausibly allege fraud, it cannot state a claim under the sham litigation doctrine.  *See Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.* ("*PRE*"),

---

[7] Much of Dawgs's Opposition consists of citations to cases in which motions to dismiss *Walker Process* or *Handgards* claims were denied.  These lack precedential authority, and that courts may decline to dismiss claims when confronted with a distinct set of facts is unremarkable, especially if a plaintiff has done what Dawgs fails to do here and pleads *facts* establishing a plausible claim for fraud.

508 U.S. 49, 60-61 (1993).  Not only was Dawgs obligated to state facts showing that the prior lawsuit, here the Colorado Action, was objectively baseless and success on the merits an unrealistic prospect, but it must also allege facts establishing that Crocs was indifferent to the outcome of the suit, and only used litigation as a weapon to interfere with Dawgs's business relations.  *See id.*  The facts pleaded by Dawgs do not fulfill either prong.

As discussed above, Crocs had an objectively reasonable basis for suing Dawgs and retailers who carried Dawgs's infringing goods, such as CVS.  Crocs had just received judicial confirmation from the ITC and Federal Circuit that its patents were valid and infringed by Dawgs's sister company.  In its Complaint, Dawgs states that it was adversely affected by Crocs's success in obtaining an Exclusion Order from the ITC.  Compl. ¶¶ 35, 109.  Therefore, Crocs had a good-faith basis for seeking monetary damages against Dawgs in a subsequent infringement action in district court.  Dawgs has stated no facts that undermine the presumption that when Crocs added Dawgs to the Colorado Action in 2012, it could reasonably expect to succeed.  Dawgs instead repeats legal conclusions premised on the unadorned assertion that Crocs should have known its patents were invalid on some basis or another.  Opp. at 23-25.

Dawgs also states no facts in support of the *legal conclusion* that Crocs subjectively intended for its lawsuits to be nothing more than an anticompetitive weapon to disrupt Dawgs's relationships.  *See* Opp. at 26 (citing Compl. ¶ 46) ("CROCS brought these sham actions in a clear attempt to directly interfere with DAWGS' business relationships.").  No facts have been stated to support an inference that, for instance, Crocs "was indifferent to the outcome of its suits," that Crocs knew damages would be *de minimis*, or that Crocs otherwise intended to use the legal *process*, as opposed to its *outcome*, to harm Dawgs.  *See PRE*, 508 U.S. at 65.  Without any such underlying *facts*, no rational person could make this finding.

Dawgs's last Hail Mary is to say a motion to dismiss a "sham litigation" claim is ill-suited to consideration under Rule 12(b)(6).  Opp. at 24.  The Supreme Court has not carved out such an exception to the plausibility requirement (*see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557-59 (2007) (reasoning that pleading standard applied to all antitrust claims)), and the cases cited by Dawgs are either not on point or their holdings overstated.  For example, Dawgs cites *Jarrow*

1    *Formulas, Inc. v. International Nutrition Co.*, 175 F. Supp. 2d 296, 310-11 (D. Conn. 2001), for the

2    sweeping proposition that the "two-part *PRE* test cannot be decided on the pleadings."  That case

3    says no such thing.  It instead cites *PRE*, acknowledges that "sham litigation" claims can be

4    dismissed at the pleading stage, and reasons that, on the facts before it, "[t]he complaint alleged

5    facts, which, if proven, would satisfy the two-part definition of sham litigation."  *Id.* at 311.

           **3.    Crocs Sought Dismissal Of All Of Dawgs's Antitrust Claims.**

7          In its Motion, Crocs asked the Court to dismiss all of Dawgs's antitrust claims—including

8    its claim of exclusionary conduct under the Clayton Act.  Mot. to Dismiss at 12.  This claim relies

9    on the same nucleus of facts stated in its other two antitrust claims—that Crocs's fraud in the PTO

10   and in enforcing its patents has had the effect of excluding Dawgs from selling its products.  The

11   claim is therefore subject to dismissal for the same reasons as the other antitrust claims.  In

12   opposition, Dawgs says its Clayton Act claim relies on a legal conclusion that Crocs independently

13   orchestrated an arrangement to exclude Dawgs from the market.  Opp. at 27.  The sole factual

14   allegation made by Dawgs is a cryptic statement indicating that Crocs's good-faith litigation

15   activity, protected by the *Noerr-Pennington* doctrine, made retailers wary of carrying Dawgs's

16   products.  Compl. ¶ 81 ("[Exclusionary] arrangements were entered into or resulted from the

17   relationship between CROCS and many retailers throughout the United States, including Academy

18   Sports, and others, who informed plaintiff DAWGS that the reason they would not carry DAWGS

19   products is because of agreements with CROCS.").[8]  This is a repackaged claim that "sham

20   litigation" by Crocs chilled competition when retailers declined to carry Dawgs's infringing wares.

21   The facts alleged are more consistent with a view by Academy that selling Dawgs's infringing

22   products would violate a covenant not to carry counterfeit goods; it therefore does not rise to the

23   level of a *plausible* claim.  *See Iqbal*, 556 U.S. at 678.  Dawgs acknowledges that it is not actually

24   aware of Crocs imposing "a written exclusivity term" on retailers (Opp. at 27), and the Complaint

25   has not alleged that Crocs *required* Academy or other retailers to forgo selling Dawgs-brand

---

[8] While Crocs's Opposition suggests that Crocs told retailers not to carry *any* of Dawgs's products (including winter boots, safety boots and golf shoes) (Opp. at 27), such allegations do not appear in Dawgs's Complaint and therefore must be disregarded.  *Cf.* Compl. ¶ 81.

products altogether.  Consequently, this claim fails to meet the basic pleading standard of Rule 8, and certainly does not meet the heightened standard for fraud under Rule 9(b).

      **B.**     **Crocs's State-Law Claims Are Preempted And Fail To State A Claim.**

Dawgs says its claims under Nevada state law rest on distinct allegations from its federal antitrust claims.  Dawgs cannot contradict its own Complaint, which explicitly recites that its two state law claims rely on the same nucleus of facts as its antitrust claims.  Compl. ¶ 90 ("this Fourth Claim for Relief arises from the same transactions and from a common nucleus of operative facts as alleged in the first three federal claims for relief"); *id.* ¶ 98 (same as to Fifth Claim for Relief).  The absence of the word "patent" in the fourth claim (*see* Opp. at 28) signifies nothing.  Because fraud has not been adequately pleaded as to the federal claims, the state law claims are preempted and fail as well.  *See* Mot. to Dismiss at 20-21.

**CONCLUSION**

For the foregoing reasons, the Court should grant Crocs's motion to dismiss Dawgs's complaint under the bar against claim splitting, or in the alternate, for failure to state a claim, and dismiss Dawgs's complaint without leave to amend.

Dated: October 16, 2014

Respectfully,

JOLLEY URGA WOODBURY & LITTLE


By:    /s/ William R. Urga
       WILLIAM R. URGA, ESQ. #1195
       3800 Howard Hughes Pkwy., 16th Floor
       Las Vegas, NV  89169
       Telephone:  (702) 699-7500
       Facsimile:  (702) 699-7555
       Email:  FedCt@juww.com
               wru@juww.com

and

MICHAEL A. BERTA, ESQ. **
SEAN M. CALLAGY, ESQ.**
ARNOLD & PORTER LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA  94111-4024
Telephone:  (415) 471-3100
Facsimile:  (415) 471-3400
Email:  michael.berta@aporter.com
        sean.callagy@aporter.com

LAUREN S. MIYAMOTO, ESQ. **
ARNOLD & PORTER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA  90017-5844
Telephone:  (213) 243-4000
Facsimile:  (213) 241-4199
Email:  lauren.miyamoto@aporter.com
** (Pro Hac Vice Forthcoming)

Attorneys for Defendants
CROCS, INC., a Delaware corporation


## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that I am an employee of

Jolley Urga Woodbury & Little and that on this 16th day of October, 2014, I caused the document

entitled **DEFENDANT CROCS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO**

**DISMISS COMPLAINT AS DUPLICATIVE OR FOR FAILURE TO STATE A CLAIM**

**(FED. R. CIV. P. 12(b)(6) & 9(b))** to be served on the parties in this action via the Court's

1   CM/ECF System.

2

3                                       By: _____/s/ *Linda Schone*_____
4                                            An Employee of JOLLEY URGA
                                                 WOODBURY & LITTLE
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY ISO CROCS'S MOT. TO DISMISS COMPLAINT AS DUPLICATIVE OR UNDER FRCP 12(b)(6) & 9(b)