Brian J. Elliott (Nevada Bar No. 11115)
 *brian.elliott@usadawgs.com*
Corporate Counsel
U.S.A. DAWGS, INC.
4120 W. Windmill Lane, Unit #106
Las Vegas, Nevada 89139
Telephone:  (702) 260-1060
Facsimile:  (702) 260-1606

BLECHER COLLINS PEPPERMAN & JOYE, P.C.
Maxwell M. Blecher (*Admitted Pro Hac Vice*)
 *mblecher@blechercollins.com*
Donald R. Pepperman (*Admitted Pro Hac Vice*)
 *dpepperman@blechercollins.com.*
Jordan L. Ludwig (*Admitted Pro Hac Vice*)
 *jludwig@blechercollins.com*
515 South Figueroa Street, Suite 1750
Los Angeles, California 90071-3334
Telephone: (213) 622-4222
Facsimile: (213) 622-1656

Attorneys for Plaintiff
U.S.A. DAWGS, INC.

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

### SOUTHERN DIVISION

| | |
|---|---|
| U.S.A. DAWGS, INC., a Nevada corporation,<br><br>                Plaintiff,<br><br>        vs.<br><br>CROCS, INC., a Delaware corporation; and DOES 1-10,<br><br>                Defendants. | Case No. 2:14-cv-1461-RFB-PAL<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF ITS EMERGENCY MOTION TO VACATE OR MODIFY (11/25/14) SCHEDULING ORDER**<br><br>Judge Richard F. Boulware II<br><br>Magistrate Judge Peggy A. Leen<br><br>Trial Date:  None set<br><br>Complaint Filed:   September 10, 2014 |

Blecher Collins
Pepperman & Joye

## I.    <u>INTRODUCTION</u>

Plaintiff U.S.A. Dawgs, Inc. ("Dawgs") submits this Reply Brief in support of its December 19, 2014 Emergency Motion requesting that the Court relieve the parties of the tight deadlines set in the existing Scheduling Order or grant a reasonable continuance of those dates.  Dawgs' request should be granted because this is a complex antitrust case involving critical discovery including large document productions and many witnesses -- particularly retailers, distributors and competitors across several states, as well as footwear inventors and experts to consult or depose as far afield as Canada, Australia and Italy, as well as the following factors:

- Defendant Crocs, Inc.'s ("Crocs") cornerstone design patent – used improperly to litigate against Dawgs and others – is currently rejected in USPTO Reexamination proceedings due to Crocs' failure to disclose its own known prior sales and publications;

- There has been no finding of validity of Crocs' patents in prior proceedings;

- Plaintiff Dawgs has never been held to infringe any Crocs patent;

- New evidence has surfaced invalidating each of Crocs prior asserted patents;

- Crocs has a predatory history and reputation for litigating its competition out of the market; and

- Plaintiff and Defendant are not only fully engaged in discovery, but have each filed and responded to multiple motions, exchanged Initial Disclosures, discussed a Protective Order and protocols for the discovery of electronically stored information, and received and propounded written discovery requests, and as such, there has been no failure to litigate this case on Plaintiff Dawgs' part.

Blecher Collins
Pepperman & Joye

1    Defendant Crocs' curious fixation on reaching the conclusion of the fact and

2    expert discovery periods as fast as possible (and without any party thus far

3    producing any documents) is highly surprising, considering the complex nature of

4    the case (including conduct spanning from at least 2001 through the present).

5    Further, this position contrasts with Crocs' _initial_ position in this matter.  Crocs filed

6    a Special Motion to Dismiss (ECF No. 5) as its first filing in this action and well in

7    advance of its deadline to do so, seeking to avail itself of the expansive discovery

8    _stay_ provisions of that statute as early in this action as possible.  In its Opposition,

9    Crocs cites _TradeBay, LLC v. eBay, Inc._, 278 F.R.D. 597, for support of its current

10   stance, yet _TradeBay_ is completely inapposite, as _TradeBay_ did not involve a

11   Special Motion to Dismiss pursuant to N.R.S. § 41.660.  Further to this point, Crocs

12   conspicuously and affirmatively argued for a _stay_ of this action in its Special Motion

13   to Dismiss until that (first of two) Motion to Dismiss could be considered and heard:

14   "Upon the filing of a Special Motion to Dismiss, Nevada courts must stay

15   discovery[.]"  (See Declaration of Donald R. Pepperman, Esq. "Pepperman Decl." ¶

16   8.)  Now in ambush fashion, Crocs is insisting on expedited discovery with expert

17   witness designations due to be exchanged January 15, 2015.  Forcing expert

18   disclosures before a single document has been exchanged will not only be

19   manifestly unfair, it will infringe on Dawgs' right to due process of law.

20       The doctrine of judicial estoppel is directly applicable in situations such as

21   this, where a party presents inconsistent positions within the same action to suit the

22   exigencies of the moment.  Invocation of judicial estoppel in conjunction with

23   vacating or modifying the present Scheduling Order would be a just, intuitive and

24   readily administered solution to the present schism between the parties.  Vacating

25   the Scheduling Order would avoid the significant prejudice that Dawgs faces under

26   the present Order, while causing no prejudice and minimal impact on either party.

27   Both parties have initiated and will be fully engaged in present discovery efforts,

28

1  and both parties will seek to further and expand these efforts in mutually

2  constructive fashion.

**II.      DEFENDANT CROCS IS JUDICIALLY ESTOPPED FROM**

**FROM RETREATING FROM ITS INSISTENCE THAT ALL**

**DISCOVERY AND PROCEEDINGS BE STAYED**

6        The United States Supreme Court, in *New Hampshire v. Maine*, 532 U.S. 742

7  (2001), explained the doctrine of judicial estoppel as follows:  "[W]here a party

8  assumes a certain position in a legal proceeding, and succeeds in maintaining that

9  position, he may not thereafter, simply because his interests have changed, assume a

10  contrary position, especially if it be to the prejudice of the party who has acquiesced

11  in the position formerly taken by him." *Id.* at 749 (*quoting Davis v. Wakelee*, 156

12  U.S. 680, 689 (1895)); *see also, Ah Quin v. County of Kauai Dep't of Trans.*, 733

13  F.3d 267, 270 (9th Cir. 2013); *Baughman v. Walt Disney World Co.*, 685 F.3d 1131,

14  1133-34 (9th Cir. 2012) ("[T]he claim may not be factual at all. We've applied the

15  doctrine to prevent a party from making a legal assertion that contradicted its earlier

16  legal assertion.") (*citing Wagner v. Prof'l Eng'rs in Cal. Gov't*, 354 F.3d 1036, 1044

17  (9th Cir. 2004).

18        The purpose of the doctrine "is to protect the integrity of the judicial process

19  by prohibiting parties from deliberately changing positions according to the

20  exigencies of the moment." *New Hampshire*, 532 U.S. at 749-50 (*quoting Edwards

21  v. Aetna Life. Ins. Co.*, 690 F.2d 595, 598 (6th Cir. 1982)); *United States v.

22  McCaskey*, 9 F.3d 368, 378 (5th Cir. 1993) (internal citation omitted); *see also, Ah

23  Quin,* 733 F.3d at 275 ("Judicial estoppel typically operates to protect the integrity

24  of the judicial system with respect to the particular litigant in front of the court.");

25  *Scarano v. Central R. Co. of New Jersey*, 203 F.2d 510, 513 (3d Cir. 1953) ("[U]se

26  of inconsistent positions would most flagrantly exemplify that playing 'fast and

27  loose with the courts' which has been emphasized as an evil the courts should not

28  tolerate. And this is more than affront to judicial dignity.  For intentional self-

Blecher Collins
Pepperman & Joye

-3-

1  contradiction is being used as a means of obtaining unfair advantage in a forum
2  provided for suitors seeking justice.") (internal citation omitted).
3         As the Supreme Court observed in *New Hampshire*, "the circumstances under
4  which judicial estoppel may be appropriate by invoked are not reducible to any
5  general formulation."  *New Hampshire*, 532 U.S. at 750.  The Court nevertheless
6  proceeded to identify "several factors [that] typically inform the decision whether to
7  apply the doctrine in a particular case," *Id.*, including, in pertinent part, as follows:

8         First, a party's later position must be clearly inconsistent with its earlier
       position. Second, courts regularly inquire whether the party has succeeded in
9       persuading a court to accept that party's earlier position . . . . A third
10      consideration is whether the party seeking to assert an inconsistent position
       would derive an unfair advantage or impose an unfair detriment on the
11      opposing party if not estopped.
12

13 *Id.* at 750-1 (internal quotations and citations omitted; emphasis added).

14        Crocs argued that the Court "must stay discovery" in its Special Motion to
15 Dismiss, and thus relieve it of the "attendant burdens" of litigation.  Now, in its
16 current Opposition, Crocs simultaneously seeks to instead expedite and severely
17 limit all discovery.  These are clearly self-contradictory and inconsistent positions,
18 manifestly meeting the first *New Hampshire* factor.  As the Court has yet to hear or
19 rule upon Crocs' two Motions to Dismiss, the "second" *New Hampshire* factor does
20 not come into play in a clear fashion; yet, it is resoundingly clear, under the third
21 and final *New Hampshire* factor, that Crocs' reversal in its efforts to stay all
22 discovery in the case came as a complete and utter surprise to Plaintiff Dawgs.  (*See*
23 Pepperman Decl. ¶ 8.)  Crocs, not having the burden of evidence or burden of proof
24 in this case, now suddenly enjoys a pronounced and unfair advantage in restricting
25 the discovery period, while Dawgs now operates under a severe and unfair
26 detriment, facing exceedingly tight discovery deadlines after relying upon the
27 statements and inaction of an opportunistic and inconsistent opposing party.  *See*
28

Blecher Collins
Pepperman & Joye

-4-

*New Hampshire*, 532 U.S. at 750; *see also, e.g.*, 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4477, p. 782 (1982) ("absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek and inconsistent advantage by pursuing an incompatible theory.").

Even a preliminary consideration of the Supreme Court's *New Hampshire* factors will "firmly tip the balance of equities" in favor of Dawgs' position and in favor of Crocs being estopped by this Court from its flip-flop position. *New Hampshire*, 532 U.S. at 751. Dawgs asks that this Court to grant its Emergency Motion by reason of just and proper application of the equitable doctrine of judicial estoppel and in light of the respective positions of the parties.

## III.  PLAINTIFF DAWGS HAS NOT BEEN DILATORY IN ITS DISCOVERY EFFORTS AND WILL BE SUBSTANTIALLY PREJUDICED UNDER THE CURRENT UNWORKABLE SCHEDULING ORDER

Good cause for modifying a Scheduling Order exists where "it cannot reasonably be met despite the diligence of the party seeking the extension." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (quoting 1983 Amendment to Advisory Comm. Notes to Fed. R. Civ. P. 16. Plaintiff Dawgs has embarked upon active and diligent discovery efforts <u>immediately</u> subsequent to the Rule 26(f) conference between the parties conducted on December 5, 2014. Fed. R. Civ. P. 26(d). ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f).").  As Crocs acknowledges, only once the Scheduling Order issued, did Dawgs' counsel take the position that there should be plenary discovery to attempt to comply with the Order. Thus, in the last month, Dawgs has received written discovery requests, propounded written discovery requests, and is in the process of retaining multiple experts to develop and produce written experts upon receipt of initial discovery materials and documents

-5-

1   from Crocs.  Under the current Scheduling Order, the deadline to amend pleadings

2   has already passed, and the deadline to disclose all experts and reports is scheduled

3   to take place on January 15, 2015, two months prior to the current fact discovery

4   deadline of March 16, 2015 and prior to any documents or written discovery

5   responses being produced by Crocs or any depositions having been noticed or taken

6   by either side.  Moreover, the Court has still not ruled on Defendant Crocs' pending

7   Motions to Dismiss (filed on September 17, 2014 and October 3, 2014,

8   respectively).  Consequently, the parties are still in the dark as to what claims,

9   issues, and/or defenses on which to focus fact and expert discovery.

10          Even as Plaintiff Dawgs is moving swiftly in efforts to comply with the

11   current Scheduling Order, the strict nature of the deadlines and the complex nature

12   of this antitrust case preclude Plaintiff from availing itself of adequate discovery and

13   will impair and may likely eliminate its ability to be fully heard on the merits of its

14   case by the Court.  Thus, the only proper way for Plaintiff to be able to develop the

15   facts and issues of its case without significant prejudice and deprivation of due

16   process is for the Court to intervene.  Consequently, Dawgs is compelled to seek a

17   continuance from this Court in conjunction with an extension of the discovery

18   period and concomitant deadlines.  The decision to grant a continuance is committed

19   to the sound discretion of the trial court.  *Woods v. Saturn Distribution Corp.*, 78

20   F.3d 424, 427 (9th Cir. 1996); *Rios-Berrios v. I.N.S.*, 776 F.2d 859, 862 (9th Cir.

21   1985).  As Dawgs has previously observed, the interests of parties, due process,  and

22   the interests of justice are served by granting a continuance or extension of the

23   discovery cutoff to permit a party reasonable and adequate time to complete its

24   needed discovery.  *See, e.g.*, *Fed. Deposit Ins. Corp. v. Loube*, 134 F.R.D. 270, 274

25   (N.D. Cal. 1991).

26

27

28

Blecher Collins
Pepperman & Joye

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Blecher Collins
Pepperman & Joye

**IV.   <u>CROCS WILL NOT BE PREJUDICED BY VACATING OR</u>**
**<u>MODIFYING THE PRESENT SCHEDULING ORDER</u>**

This is an antitrust case focusing on Crocs' anticompetitive tactics in the market (spanning at least a 14 year time period) for a popular and lucrative clog type of shoe, a market for which Crocs' currently controls more than a 90% market share. Rather than properly reflecting the work of competitive market forces or inventive effort, Crocs' current dominance is instead a result of its active strategy to monopolize and control the market through baseless litigation and attendant threats. Pursuant to this course, Crocs has initiated numerous, successive litigations in multiple fora around the globe in a nearly continuous manner since at least 2006. As such, Crocs has ample resources and expectations developed over time with regard to litigation processes to the extent that any single litigation matter, including the present action, or the broadening of the discovery timeframe for this case, does not and cannot, amount to a substantial burden on Crocs or prejudice Crocs in any meaningful fashion.  Crocs' cries of prejudice particularly ring hollow as no trial date has yet been set and no rulings have been made on the Motions to Dismiss still pending before the Court.

Crocs expends effort and repeated, hyperbolic exhortations ("throw all discovery limits and deadlines to the wind," "Crocs will suffer prejudice if Dawgs is allowed to flaunt [sic; flout] the Court's Order") in its emphatic notion that the reasonable scheduling modifications Plaintiff Dawgs is seeking might *"double"* or *"triple"* (emphasis in original) the discovery period or discovery provisions of the current Scheduling Order.  Inexplicably (and without any legal support whatsoever), Crocs somehow tries to restrict the present mandated discovery period and discovery parameters to some kind of inscrutable, rigid mathematical formula with universal application, whereby increasing the days involved *by "a factor of two"* is somehow *prima facie* beyond the pale.  Each case before a court (with very limited exceptions) is distinct and different in the facts and issues that should be

-7-

1   investigated, considered and explored, and that is why what constitutes "a

2   reasonable discovery period" would ideally be determined on a case-by-case basis

3   and not subjected to a fixed and immutable length.  In any event, Crocs will not be

4   significantly burdened or prejudiced by extending (or, as Crocs originally sought,

5   staying) the discovery period in this particular case.  Crocs surely will not face

6   prejudice by the modest and reasonable scheduling modifications that Plaintiff

7   Dawgs requests.  In sum, Plaintiff Dawgs simply seeks that both parties have an

8   adequate opportunity to meaningfully develop and present the facts and issues of

9   this case for a fair trial on the merits.  This cannot be achieved under the strict

10  confines of the existing Scheduling Order which hamstrings Dawgs on all levels.

## V.   <u>CONCLUSION</u>

12          For the foregoing reasons, Plaintiff respectfully reiterates its request for an

13  Order vacating the existing Scheduling Order (ECF No. 28) until such time as the

14  Court rules on Crocs' pending Special Motion to Strike Pursuant to N.R.S. 41.660

15  (ECF No. 5), and the pending Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) and

16  9(b) (ECF No. 13); or in the alternative, for an Order modifying the existing

17  Scheduling Order to the dates previously proposed and outlined by Plaintiff Dawgs.

Dated:  January 7, 2015            BLECHER COLLINS
                                   PEPPERMAN & JOYE, P.C.
                                   MAXWELL M. BLECHER
                                   DONALD R. PEPPERMAN
                                   JORDAN LUDWIG


                        By:    _/s/ Maxwell M. Blecher_
                                   Maxwell M. Blecher
                                   Attorneys for Plaintiff



Blecher Collins
Pepperman & Joye

-8-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I, Maxwell M. Blecher, hereby certify that on January 7, 2015, I caused the foregoing document titled **PLAINTIFF'S REPLY IN SUPPORT OF ITS EMERGENCY MOTION TO VACATE OR MODIFY (11/25/14) SCHEDULING ORDER** to be electronically filed and served via the ECF system

This document is available for review and downloading from the ECF system.

By _____ */s/ Maxwell M. Blecher*
MAXWELL M. BLECHER
*Counsel for Plaintiff*

69680.3

Blecher Collins
Pepperman & Joye